BUMPASS, et al. *vs* WEBB.

BUMPASS, et al. *vs.* WEBB.

*As to the impeachment or review of an award:*
*As to error in a Chancery decree, all parties in inter=
est not being in Court.*

1. Where parties leave a matter of controversy, to arbitration,
they, nor either of them, can impugn the decision, for *extrin-
sic* causes, unless it be shewn that the arbitrators have been
guilty of corruption, partiality, or gross misbehavior.
2. Improper conduct in arbitrators, in their award, may be shewn
by direct testimony, or by such a state of facts as lead the
mind to the conclusion that an award has been influenced by
dishonest motives.
3. To authorise the review of an award, it is not sufficient to
shew an error of *judgment*, or that the award has been *unwise-
ly* determined.
4. *It seems*, that an award respecting an allotment of lands, be-
tween joint owners, might be reviewed in Chancery, where
the allotment were so disproportioned in value, as to strike
the senses at once, as a matter of injustice, or showing posi-
tive corruption in the arbitrators.
5. If an award discover on its face, some palpable mistake of
law or fact, operating greatly to the prejudice of either par-
ty, it may be impeached.
6. Evidence, in impeaching an award, shewing a *mere* mistake
of law or fact, in rendering the award, is not competent.

4P 9

7. A decree, erroneous, merely on account of parties in interest not being brought into the Court below—will not be reversed —it appearing regular as to the parties taking the writ of error.

This was a bill in Chancery, in Lauderdale Circuit Court, and was filed by John Webb against Gabriel Bumpass. The facts and circumstances of the controversy, as disclosed by the bill, answers, &c., were these:

In the year eighteen hundred and eighteen, one Eli W. Carr, purchased at the land sales, certain lands, consisting of fractional section twelve, township two, range fifteen, west, and the west half of section thirty, township two, range fifteen, west, and subsequently transferred the certificates of purchase, after the payment of one fourth the amount of the purchase money to the defendant, Bumpass. The latter then sold to complainant, the one half of all the lands above described, with others set out in the bill, and executed to him a bond, stipulating a conveyance of the title thereto, (excepting a small part, on which was situated the town of Waterloo,) when certain expressed conditions were complied with. After this period, defendant transferred to Tyre Rhodes, John McCracken, M. H. Buchannan, Meredith Thomas, and G. Bumpass, the certificate of fractional section twelve,—as commissioners of the town of Waterloo, who procured a patent therefor. Bumpass, also, subsequently transferred to one John Till, his son-in-law, the west half of section thirty-one, township one, range fourteen, who, before the date of the said transfer, received full notice of complain-

ant's interest in the said parcel of land; and who afterwards obtained the patent therefor. It further appeared, that on the tenth day of June, eighteen hundred and twenty-two, complainant and defendant entered into mutual covenants by which they bound themselves to abide by, and perform the award of certain arbitrators chosen by themselves, to divide the before mentioned lands; and that in pursuance thereof, the said arbitrators proceeded to lay off and to divide said lands between the respective parties. In pursuance of the division and allotment of the said lands, under the said arbitration, the respective parties took possession of their several parcels.

The bill charged, that defendant, by divers combinations and fraudulent efforts, had interposed obstacles to the completion of the award; and, therefore, prayed the establishment of the award, and the interposition of the Court to effect the several allotments made by the arbitrators.

Gabriel Bumpass and John Till answered—the former, principally relying, for his defence, upon a charge of partiality and unfairness in the arbitratration.

It appeared by the record, that *subpœna* was served alone on Bumpass, the defendant; and that no proceedings were had against several of the parties charged in the bill as materially concerned in the transactions.

The Chancellor below decreed, establishing the award, and vesting in the complainant and defendant the title to the several allotments made by the arbitrators; from which decree, Bumpass alone, took a writ of error to this Court.

He here assigned, as error—

First—The decree confirming the award.

Second—The vestiture of title, out of the plaintiff in error, in a portion of the lands.

Third—The proceeding without necessary parties.

Fourth—The proceeding without regularity against all the parties charged.

Fifth—The refusal of the Court to dismiss the bill.

*S. Parsons*, for plaintiff in error.
*Stewart* and *Thornton*, contra.

COLLIER, J.—The defendant in error, (who was plaintiff below,) became jointly interested with the plaintiff, (in error,) Gabriel Bumpass, in certain lands purchased of the general government, under the credit system. In '22, before full yayment had been made, they agreed to submit to the arbitrament and decision of certain persons, chosen by them, the partition of these lands—Bumpass entering into bond to stand to and abide the decision of the arbitrators. The arbitrators accordingly made their report,—particularly designating the respective parcels of land allotted to the parties. Bumpass, disregarding their decision, transferred to John Till, his son-in-law, the certificate of purchase, for an half section of the land, at the same time informing him that the award was so unequal and unjust, that it never would be carried into effect. The certificate of purchase for another parcel of the land, by agreement, between Bumpass and the defendant in error, was transfer-

ed to Tyree Rhodes, John McCracken, M. H. Bu-channan, Thomas Meredith, and Gabriel Bumpass, as trustees, to lay off and sell lots for a town. The remaining parcel of land was purchased of the defendant in error, for the joint benefit of himself and Bumpass : and he is now ready, as he states, to convey' to Bumpass, his interest under the award. The title to these several parcels of land have passed from the United States. To the first, it vests a title in Till; to the second, in the trustees we have mentioned; and to the third, in the defendant in error. It further appears, that at the time Till became the assignee of the certificate from Bumpass, that the defendant in error was in possession of the land allotted him by the award.

On this state of facts, the defendant in error exhibited his bill;—the object of which is to give effect to the partition made by the arbitrators. Tyree Rhodes and Thomas Meredith are alleged to be dead. The other trustees, with John Till, are made parties; but nothing said as to heirs, &c., of Rhodes and Meredith, or whether they have left any.

Many depositions appear to have been taken by the plaintiff in error; all of which, merely prove, that the lands allotted to Webb, by the partition, are of greater value, than those assigned to Bumpass.

No proof was taken by the defendant in error.

It does not appear that subpœna was served on defendants below, Buchanan and Meredith, or that publication was ever made—though there was an order for that purpose. Bumpass and Till alone have answered. The decree of the Court gives effect to the

partition made by the arbitrators, not only as against Bumpass and Till, but also against all the Trustees named, as well those who are dead, as those who are living, at the cost of Bumpass and Till. .

From this decree, Bumpass *alone* prosecutes a writ of error to this Court.

Where parties constitute a *tribunal of their own* choice, by the selection of individuals, (as they have here done,) for the adjustment of a matter of difference between them, neither party can impugn the decision that may be made, for *extrinsic causes*; unless it is shewn that the arbitrators have been guilty of corruption, partiality, or gross misbehavior.[*]— This may be proved by evidence direct, or by such a state of facts as lead the mind to the conclusion, that their award was influenced by dishonest motives. It is not enough, to show an error of judgment, or that the matter of difference was unwisely determined.[†] .

[*] 3 Dessa. 297;1John. Ch.R.101; 1 Wash'n 11;lib.156

[†] 2Henn.& Munf. 408.

Now it may be true, that the parcels of land assigned to the defendant in error, may be far more valuable, in the opinions of most men, and yet not follow, that the arbitrators acted otherwise than with the strictest integrity of purpose.

If, however, the disproportion in value, in the respective allotments of land, was so great as to strike the common sense of every man, that there was positive corruption in the arbitrators, or an utter recklessness of the achievement of justice between the parties, certainly a Court of Equity should hesitate long before it would give effect to a partition thus made.

If the award discovered on its face, some palpable

BUMPASS, et al. vs WEBB.

mistake of law or fact, which operated greatly to the prejudice of one of the parties, the party aggrieved might successively impeach it—-(*See cases cited above.*)—-But it is incompetent to show by proof, a a *mere mistake of law or fact---Pleasants, et al.* vs. *Ross.*[*]

[*] 1 Wash. 156.

Equity has often refused its aid to compel the specific performance of hard and unconscionable contracts for the conveyance of lands. And if an obligee, in a bond for the conveyance of title, where the contract is of that character, were to attempt to coerce a performance, Equity, in general, would leave him to his legal remedy upon the penalty.

It is not pretended, that the contract between Bumpass and the defendant in error, is obnoxious to any legal or equitable objection, but only that the award made to effectuate that contract, inflicts upon Bumpass severe injustice.

The conclusiveness of the award, (except for the causes we have mentioned,) precludes the enquiry, whether a performance would be hard or unconscionable, unless it were first successfully attacked by some cause distinctive to its validity. So far, then, as the merits of this cause are concerned, we can discover no error. The decree is, however, erroneous, for not bringing in, either by personal service of *subpœna*, or by publication and judgment *pro confesso*, the defendants, Buchanan and McCracken. It is also erroneous for not making the heirs of Rhodes and Meredith parties to the bill; or else shewing that they had none. These were all material parties : they have the legal title to a part of the land in

controversy : and to divest it, it is indispensable that they should be brought in.    But, in as much as Bumpass is *alone* complaining, and as to him and Till, the decree is regular—Till becoming a transferree, of a part of the land, with full notice of the claim of the defendant in error,—occupies, in all respects, the situation, that Bumpass would have occupied, had he retained the legal title.

In this view of the case, the decree is affirmed.