## BOWIE v. MINTER, ET ALS.

1. Infants must, in order to the recovery of their rights, *sue in their own names by their guardians*, instead of making their *guardians the principal actors in the cause*; and this is the rule, as well in equity, as at law.

2. The office of a *supplemental bill*, is to supply a defect, which has arisen in the progress of the suit, by the happening of some event *subsequent* to the filing of the *original bill;* and its object is, to bring before the Court, matters which have occurred *since* that time.

3. Where the *original bill* is itself defective, the *deficiency* may be cured by an amendment.

4. The appropriate proceeding, when new parties, with new interests, arising from events *since* the institution of the suit, are to be brought before the Court, is *an original, in the nature of a supplemental bill.* Such bill is, in effect, the commencement of a new suit, but may, in its consequences, draw to itself the advantage of the proceedings on the former bill.

5. Where a suit in equity abates by death, or marriage, the proper means of restoring vitality to the cause, is by a *bill of revivor*, to be filed, by or against the person, who comes in, *in the same right* with the original party.

6. The proper office of *a bill of revivor and supplement*, is to revive a suit that has abated, and to supply any defects in the original bill, arising from subsequent

Bowie v. Minter, et als.

events; but the supplemental matter must have been newly discovered, and verified by affidavit.

7. Where an individual describing himself, as the guardian of certain infants, files a bill *in his own name*, the infants cannot file a supplement thereto, or an original in the nature of a supplemental bill, which shall give them the advantage of the suit commenced by their guardian; and though, one of the infants, who is a female, marry, herself and husband cannot file *a bill of revivor and supplement*, because she was not a party to the original cause.

8. A bill filed by infants, on attaining their majority, or marrriage, which refers to one, filed by their guardian, *in his own name*, while they were in wardship, but does not recite its substance, will not authorise a decree in their favor, such as the guardian himself sought.

9. Where a person, having no interest in the matters litigated, is made a complainant in equity, the bill should be dismissed for a misjoinder of plaintiffs.

10. A supplemental bill cannot be filed without leave of the Court; but *quere*, will not the subsequent assent of the Court, cure the irregularity?

This cause comes here by writ of error, from the Court of Chancery sitting at Cahawba.

In August, 1836, the defendant in error, Wm. T. Minter, filed his bill in equity, stating that he had been lately chosen, and legally appointed, the guardian of George J. and Sarah R. Bowie, infant heirs of John Bowie, deceased; of whose persons and estates, the plaintiff in error had been a guardian, from the year 1827, until a short time previous thereto. The bill then alledges, that the defendant below resigned his guardianship; and charges, that he has in his possession sundry slaves, and a large sum of money, belonging to his late wards, of which an account is prayed, and such decree touching the same, as is agreeable to equity, &c.

To this bill, the defendant filed his answer. Thereupon, the complainant, Minter, on the 30th September, 1837, filed what professes to be, a supplemental bill, though, it does not appear that leave was first obtained for that purpose. This bill, in addition to other statements, sets out the names of sundry slaves of the complainant's wards, then in the defendant's possession, and prays, that the defendant be enjoined from removing them; and that he have them forthcoming, to abide the final order or decree of the Court. Whereupon, an injunction was issued, and a bond with surety, in the sum of twenty thousand dollars, executed by the defendant; conditioned to have

the slaves forthcoming, to abide the decree of the Court in regard to them. This bill was also answered.

After testimony had been taken by the complainant, Minter, another bill, professing to be a supplemental bill, was filed, without leave, either asked or given. The introductory part of that bill, is as follows: "Your orators, William T. Minter and George J. Bowie, and your orator and oratrix, Lard M. H. Walker and Sarah R., his wife, that on or about the 9th day of August, 1836, your orator, William T. Minter, then guardian of your orator, George J. Bowie, and your oratrix, by the then name of Sarah R. Bowie, exhibited his original bill of complainant in this Honorable Court, against George Bowie, late guardian, &c., as defendant thereto." The bill, then states the filing of the original and supplemental bill by Minter, and the proceedings which have been had in each; and by way of supplement, sets forth an ante-nuptial agreement between Lard W. H. Walker, of the first part, William T. Minter, guardian of Sarah R. Bowie, [now Mrs Walker,] of the second part, and George J. Bowie, [trustee] of the third part; which, it is alledged, was executed in May, 1838. By that agreement the property and estate of Mrs. Walker, whether in action, or possession, was secured to her, free from the claim of her husband, his creditors, or purchasers under him. The bill then, prays that the ante-nuptial contract, may be considered as valid; and one moiety of what may be recovered of the defendant, be decreed to be settled according to its stipulations. To this bill, the defendant also, filed an answer, and insisted upon the benefit of a demurrer therein; because it was filed without leave of the Court.

All these bills came on to be heard together; and the Chancellor rendered his decree, declaring that the slaves in the defendant's possession, alledged to be the property of his wards, were subject to distribution as such; and referred it to the Master, to take an account of their time, and of defendant's expenditures, &c. The decree, further gave effect to the trust declared by the ante-nuptial agreement, and directed, that the defendant pay all costs, to be taxed, &c.

The view taken of this case, renders it unnecessary to state

with particularity, the matters disclosed in the bills and answers, or to notice the proof in the record.

This cause was argued with very great ability, both upon the merits of the controversy, and upon the regularity of the proceedings, by J. B. CLARK and J. A. CAMPBELL, for the plaintiff in error, and EDWARDS and G. W. GAYLE for the defendants; but as the questions arising upon the latter branch of the argument, are alone considered, it is deemed unnecessary to report an abstract of the points made by counsel.

COLLIER, C. J.—It is objected by the plaintiff in error, that, without reference to the substantial merits of the controversy, the Chancellor should have dismissed all the bills which were submitted to him at the hearing. 1. Because Wm. T. Minter was the sole complainant in the original, and first supplemental bill, while the case stated, shows that his wards should have been the *actors* in the cause, by him. 2. Because the last supplemental bill was not good as an original, so as to sustain the decree, or if good as an original, it was demurable; because Wm. T. Minter, who does not appear to have been a proper party, was made a complainant—and because the same was filed without leave of the Court.

It is clear, that the original, and first supplemental bill are exhibited at the instance of Minter himself. True he describes himself as the guardian of certain persons, whose names he mentions, and the cause of complaint, is one in which his wards are alone interested; yet, as the plaintiff in error, is called on to answer to him individually, he must be regarded as the real party complainant. No decree, on the hearing of these bills, could be rendered, either for or against the wards; they are not described as parties, nor is any prayer made for relief in their behalf.

In McLeod v. Mason, 5 Porter's Rep. 223, there was a settlement in the Orphans' Court of Madison, of the accounts of the plaintiff, the former guardian of A. T. Heath, with the defendant, the guardian at that time. After ascertaining the sum due by the plaintiff, as guardian, the decree proceeded as follows: " on motion of Samuel Peete, attorney for George Ma-

31

son, guardian of Adaline T. Heath, infant child, &c, it is consid-
ered by the Court, that said guardian recover of and have exe
cution against George McLeod, late guardian of said Adaline
T. Heath, for the sum, &c. This order was made subsequent
to the rendition of the decree, ascertaining the amount in the
hands of the former guardian, and the Court say, " we look
upon this order for an execution, as wholly unnecessary ; yet,·
we are not permitted to disregard it, for it was made at the
same time, and by the same authority, that the decree was, and
controls it, by confining the right to sue out execution in his
own, name to the guardian." And further, " in prosecuting
a suit for the benefit of a *ward*, the guardian should describe
the ward upon the record, as suing by him, as thus : A. B. an
infant, &c., by C. D., his guardian ; and the judgment should
pursue the process and declaration."

In Sutherland v Goff, 5 Porter's Rep. 508, the declaration
commenced thus : "Martha T. Goff, guardian of Eliza A. Goff,
complains of John Sutherland in custody, &c." The subject of
the controversy was one which concerned the interest of the
ward, as was shown by the pleadings; yet, the Court held, that
the action was not well brought. And in Gregg, et al. v. Be-
thea, 6 Porter 9, it appears that the guardian of an infant
moved the Orphans' Court, for an order upon the executor of
the ancestor of the infant, to pay over a sum of money to the
guardian, to defray the charges of maintenance. It was held,
that the application to the Orphans' Court, should have been
made in the name of the ward, and judgment rendered in his
favor; and that consequently, the proceeding by the guardian
in his own name was irregular.

In the case before us, it is not pretended that Minter had
been in the possession of any of the negroes, which he sought
to recover; or that there had been any contract, between the
plaintiff in error and himself, in regard to the estate of his
wards ; but the avowed object of his bill, is the recovery of
money and property, which it is alledged, the former guardian
holds in trust for the wards. So, that, if a previous possession
by the complainant, or a contract with him, would allow a re-
medy in his own name, nothing of the kind is shown ; and the
cases cited, must apply with all force, unless a rule obtain in

equity, different from that which has been recognized at law. We think that the law, in regard to the right of the guardian to sue, must be the same in both Courts. In the case stated, in the original and first supplemental bill, it is clear, that the legal right is in the wards; and as they are entitled to whatever may be recovered, it requires no argument to prove that they have the beneficial interest also. And, as a Court of equity looks rather to the right of use and enjoyment, than the mere naked right of possession, it would seem the more imperiously to require, that the wards, instead of their guardian, should be the actors in the cause. It follows therefore, that, as these bills were filed by Minter, instead of the wards, in whom the legal, as well as equitable interest in the matters to be litigated, was vested, they should have been dismissed by the Chancellor.

2. The last bill filed in the cause cannot aid, or be aided by those previously filed. True, it professes to be a supplemental bill, yet,it cannot be regarded as such; for a bill of that description is filed, for the purpose of supplying a defect, which has arisen in the progress of the suit, by the happening of some event *subsequent* to the filing of the original bill. And the object of it, is to bring before the Court, matters which have occurred *since* the original bill was filed; hence it has been held, that whenever a defect can be remedied by amendment, a supplemental bill will not be allowed. Where a complainant discovers any *original* deficiency in his bill, he is at liberty, up to the time of joining issue, to cure the omission by amendment; and that, for the purpose of merely adding formal parties, the amendment may be made at any period of the suit. If, however, such parties are rendered necessary, by any circumstance, having occurred after the bill was filed, there must be a supplemental bill.

A supplemental bill is merely *in continuation* of the original suit, and filed for the purpose of filling up such a deficiency, as does not cause a material alteration in the matter in litigation, or a change of the principal parties; and when, therefore, it is only requisite to *add* something to the former proceedings in order to attain complete justice. But an original bill, in the nature of a supplemental bill, is properly applicable,

when new parties, with new interests, arising from events since the institution of the suit, are to be brought before the Court. The latter being to all intents and purpose, the commencement of a new suit, which, nevertheless may, in its consequences, draw to itself the advantage of the proceedings on the former bill. Story's Eq. Pl. 268 to 281; Lube's Eq. Pl. 136 and 7; Stofford v. Howlett, 1 Paige's Rep. 291; Eager v. Price, 2 Paige's Rep. 333; Mitford's Pl. 49, 78; 3 Atkins' Rep. 217

If, in the progress of a suit, a *feme* plaintiff marry, or any other event should occur, by means of which the o riginal suit falls to the ground, in consequence of there being no longer before the Court, any person by, or against whom the suit can be continued; the Court will, in such case, permit a bill to be filed by or against the person, who comes in, *in the same right* as the original party, and *whose title cannot be controverted*, praying that the suit and proceedings upon it, may be restored to the same plight and condition, as for or against the new party, in which it stood with respect to the original party, through whom the abatement was caused. Such bill, is termed a bill of revivor, and can only be had by or against the heir, executor, or administrator of a deceased party, or the husband of a *feme* plaintiff; for they alone come in by *a title that cannot be litigated*. [Lube's Eq. Pl. 140.]

A bill of revivor and supplement, is said to be a compound of a supplemental bill and bill of revivor; and it not only continues the suit which has abated, but supplies any defects in the original bill, arising from subsequent events; and where a complainant has a right to revive a suit, he may add to the bill of revivor such supplemental matter,as is proper to be added. But the supplemental matter must have been newly discovered, and verified by affidavit; and may be demurred to, by the defendant. [Westcott v. Cady, 5 Johns. Ch. Rep. 242; Douglass v. Sherman, 2 Paige's Rep. 360; Pendleton v. Fay, 3 Paige 204; Randolph v. Dickinson, 5 Paige's Rep. 517.]

If the original suit had been brought in the name of Sarah R. Bowie, upon her marriage, it might have been revived in the name of herself and husband; and the ante-nuptial contract in regard to her estate, stated by way of supplement to the bill of

revivor.   But such was not the condition of the cause; the suit was brought and continued up to the filing of the last bill, in the name of Minter; and did not abate, so far as the record informs us.

We have seen that the bill under consideration, cannot be regarded as a supplemental bill, or as an original bill, in nature of a supplemental bill; because the interest of George J. and Sarah R. Bowie existed previous to the commencement of the suit.   And in respect to the interests which have since vested in Lard W. H. Walker, that cannot be brought to the view of the Court by a bill of revivor and supplement, because his wife was not previousyl a party to the cause.

The original bill was so defective, as we have seen, that no decree could have been rendered upon it in favor of the complainant; and as the interests of his wards were then existing, it could not be aided by a disclosure of their interest, through the medium of a supplemental bill.

And even, if we could regard the bill, we are examing as an original, the defendants in error, would not be entitled to a decree under it for the slaves, and their hire which was the object of the suit.   This bill does not recite the substance of those filed by Minter, or any other facts from which the Court of Chancery could ascertain the matters in controversy.   It merely states the proceedings had on those bills—recites the antenuptial agreement—prays that the suit by Minter, may stand revived in the name of himself and the other complainants; and in addition to the prayers of those bills—prays that the trust of the ante-nuptial agreement may be established; and that such further relief as may be proper, be granted, &c.   The original and supplemental bill of Minter being out of the way, there would remain before the Court no bill, which would authorise a decree against the plaintiff, for the settlement of the accounts of his guardianship.

Again :   If the bill was good as an original, would it not be defective on general demurrer, for having made Minter a complainant, not as the guardian of George J. Bowie, but in his own right?   As George J. Bowie complains for himself, we infer that he had attained his majority before the bill was filed; and Sarah R. having married, her husband became her

guardian by operation of law. Upon this supposition, what interest remained in Minter, that made it necessary, or even proper, that he should be made a party? It was not at all essential to the ante-nuptial agreement, that he should have joined in it, as the guardian of Mrs Walker. He could not have affected her interest by any stipulation of his; and it would have been quite as binding upon the creditors and purchasers of her husband, without, as with his approbation. But we decline deciding, [as it is unnecessary,] whether Minter was an improper party, so as to have required a dismissal of the bill for a misjoinder of complainants. [Moore et al. v. Armstrong et al., 9 Por. Rep. 697.]

It has been often holden, and such may be considered the established practice, that a supplemental bill cannot be filed without leave of the Court. [Eager v. Price; 2 Paige's Rep. 333; Story's Eq. Pl. 270; Walker et al. v. Hallett; 1 Ala. Rep. N. S. 379.]

But whether the objection, that it was filed without a previous order for that purpose be available on demurrer, or whether the subsequent assent of the Court, will not cure the irregularity, are questions which we deem it unnecessary to decide; as the proceedings in the case at bar, are so radically defective that they cannot be thus perfected.

Without examining the interesting questions discussed at the bar, we are of opinion, for the reasons already stated, that the Chancellor should have repudiated the cause. His decree is therefore, reversed; and the several bills filed by Minter, as well as that filed by the defendants in error, dismissed without prejudice; and that the defendant, Wm. T. Minter, pay the costs of the original and supplemental bills filed by him; and that all the defendants pay the costs of the last bill filed as a bill of revivor and supplemental bill.