## JONES *vs.* BLALOCK.

[BILL IN EQUITY FOR SPECIFIC PERFORMANCE OF AWARD, AND INJUNCTION OF
JUDGMENT AT LAW.]

1. *Administrator's power to submit to arbitration.*—In this State, an administrator
has power to compromise or submit to arbitration an action brought by
him for the recovery of chattels belonging to his intestate's estate.

2. *Construction of submission and award.*—A pending action of detinue, brought
by an administrator against one of the distributees of the estate, was sub-
mitted to arbitration, under an agreement to which the other distributees
were parties, and by which it was stipulated, that the arbitrators should
allot to each distributee his or her distributive share of the estate, and
make such allowances between the parties as might be demanded by good
conscience and fair dealing; that the distributive share of each should be
liable to the demands of the administrator ratably for the expenses of the
administration; and that the records, inventories, decrees, and settlements
of the court, should be made pursuant to the award. The arbitrators
awarded, that the administrator should have a judgment in the action of
detinue, for all of the slaves in controversy, with a specified sum as damages,
and a portion of the costs; and divided the slaves into four lots, which
they awarded to the respective distributees. *Held*, that the share of each
distributee was liable under the judgment for its ratable proportion of the
expenses of administration, and did not become the absolute property of the
distributee until he had paid or tendered such portion of the expenses.

3. *Specific performance of award.*—A party is entitled to come into equity, to
compel the specific performance of an award, and to obtain the protection
of the court by injunction until the award can be specifically performed,
whenever he cannot obtain at law all that was intended to be given to him
by the award.

APPEAL from the Chancery Court of Lawrence.

Heard before the Hon. JOHN FOSTER.

THIS bill was filed by Mrs. Sarah Jones, one of the
distributees of the estate of Joseph K. Blalock, deceased,
against the administrator and other distributees of said
estate. Its material allegations were, that in August,
1853, John C. Blalock, the administrator of said estate,
instituted an action of detinue against complainant, for
the recovery of certain slaves which he claimed as belong-
ing to his intestate's estate; that this action, with all
other matters of controversy growing out of said estate,

was, on the 24th November, 1853, by written agreement between the parties thereto and Thomas J. Blalock, another one of the distributees, submitted to arbitration; that the submission was afterward verbally modified, so as to allow Theophilus Jones, who was a son of complainant but not a distributee of the estate, to participate in the division of said estate equally with the other parties; that the arbitrators afterwards made their award in writing, which was accepted and approved by all the parties; that the award, with all the papers relating thereto, was handed over to the administrator, in order that he might have it entered of record, pursuant to the submission, as the judgment of the court; that the administrator fraudulently concealed and withheld from the court a portion of the award which directed a division of the slaves in controversy among the several parties, and had a judgment entered up in his favor, pursuant to another portion of the award, for all the slaves in controversy, with damages for their detention, which judgment he is seeking to enforce; and that complainant delivered up the slaves as she was required to do by the award, paid the money which she was required to pay, and performed everything else which the award directed her to perform. The bill prayed a perpetual injunction of the judgment at law, and added the general prayer for other and further relief.

The submission and award, as exhibited with the bill, were as follows:

"State of Alabama, ⎬ Whereas John C. Blalock, administrator of the estate of Joseph K. Lawrence county. Blalock, deceased, has sued Thomas J. Blalock and Sarah Jones for certain slaves, claiming them as the property of said decedent, which said suits are now pending in the circuit court of Lawrence county: Now, to the end that justice may be done to all the parties, we, whose names are hereunto *assigned*, viz., John C. Blalock, administrator of J. K. Blalock, deceased, Thomas J. Blalock, and Sarah Jones, mutually agree to submit the matters litigated therein to the following persons," (naming them,) "whose award shall decide the same. And for the purpose of saving costs of witnesses at said arbitration, it is admitted,

1st, that the slaves claimed in said suits [are] the property of the estate of Joseph K. Blalock, and subject to said administration; 2d, that the said arbitrators shall settle the matter of hire, and allot to each one his or her distributive share of said estate, and make such allowance between the parties as good conscience and fair dealing may demand; 3d, that the distributive share of each shall be liable to the demands of said administrator ratably for the expenses of said administration; and that the records, inventories, decrees, and settlements of the courts, shall be in accordance with, and pursuant to said award. Given under our hands," &c.

"The State of Alabama, ⎱ We, whose names are above Lawrence county. ⎰ mentioned as arbitrators, met by appointment at the house of Thomas J. Blalock, on Thursday, the 24th day of November, 1853, for the purpose of adjusting the matters in law aforementioned; and, after being duly sworn according to law, do decide and make this our final award in manner and form as follows: 1st. We decide and award that the administrator, John C. Blalock, recover of the other parties, viz., Sarah Jones, the following slaves, of the following value:" (specifying the slaves by name, and fixing the separate value of each;) "also, one thousand and fifty-six dollars in money, which she is due the estate of said Joseph K. Blalock, deceased, together with three-fourths of the costs that may have accrued in the premises; and that the records of the circuit court of Lawrence county conform to this award. Given under our hands," &c.

That portion of the award which is alleged to have been suppressed by the administrator, as the same is exhibited with the bill, was as follows:
"The State of Alabama, ⎱ We, whose names are hereto Lawrence county. ⎰ assigned, having been [appointed] by the probate court of Morgan county to divide, distribute and allot the estate of Joseph K. Blalock, late of said county, deceased, after having been duly sworn according to law, by virtue of said appointment, and in

pursuance of said order, make the following distribution—viz., lot No. 1 to Sarah Jones," (specifying the names and value of the slaves allotted to her;) "lot No. 2 to John C. Blalock," &c.; "lot No. 3 to Thomas J. Blalock," &c.; "lot No. 4 to Theophilus Jones," &c., "all of which is respectfully submitted."

At the bottom of this paper is a written agreement, signed by the four parties in interest, in these words: "We, the heirs and distributees of the estate of Joseph K. Blalock, deceased, accept and approve the distribution of said estate. Given under our hands," &c.

The chancellor sustained a demurrer to the bill for want of equity, and his decree is now assigned as error.

R. O. PICKETT, for appellant.

D. P. LEWIS, *contra*.

RICE, C. J.—It must be considered as settled in this State, that an administrator has the power to compromise actions pending in his favor for the choses in action belonging to the estate; the *bona fides* of his conduct in making such compromise being open to inquiry by the parties in interest. His power to compromise such action being established, his power to submit it to arbitration is undeniable.—Woolfork v. Sullivan, 23 Ala. R. 548; Jones v. Deyer, 16 Ala. R. 221.

The submission to arbitration and the award, as the same are set forth in the original bill in the present case, are valid as between the parties thereto. Their meaning is the matter of difficulty. The two writings, alleged to have been signed by the arbitrators at the same time, and in relation to the same subject-matter, and to be parts of an entire transaction, must, in determining the equity of the bill, be considered and construed as constituting the award. The written submission, with its subsequent verbal modification, must be looked to in construing the award; and the presumption must be indulged, as far as it can be consistently with the award, that the arbitrators,

in making it, intended, not to annul or violate any part of the submission, but to execute every part of it.

The award, as we understand it, provides distinctly for two things; 1st, that the administrator should have a judgment in the action of detinue, against the complainant, for the slaves sued for therein, (each of them being valued separately,) and for $1056 00 as damages for their detention, (or hire,) and three-fourths of the costs of that action; 2d, that the said slaves, at the valuation put upon them in that action, and the $1056 00 of damages, should be allotted into four distributive shares; that is, share No. 1 to complainant, share No. 2 to John C. Blalock, (who is a distributee, as well as the administrator,) share No. 3 to Thomas J. Blalock, and share No. 4 to Theophilus Jones.

But now comes the question, at what time, or upon what contingency, under the award, were the slaves and damages to lose entirely their character as assets of the estate of John C. Blalock's intestate, and to become the absolute property of the four persons respectively to whom the distributive shares were allotted as aforesaid? As to that question, the award itself is silent. But we think the answer to it is found in that part of the submission which is unaffected by the verbal modification, and which expressly declares, " that the distributive share of each *shall be liable to the demands of said administrator ratably for the expenses of said administration;* and that the records, inventories, decrees, and settlements of the courts, shall be in accordance with, and pursuant to said award." It strikes us, that the very object the arbitrators had in view, in providing in their award that the administrator should have a judgment in the detinue suit for the slaves and damages, was to fix upon them the character of *assets of the estate,* and to continue that character, as to each distributive share, until its ratable portion of the expenses of the administration of the estate was paid; and in that way to arm the administrator wit. the power of effectually enforcing by his judgment his dem ind upon the claimant of each share, of its ratable portio. of said expenses. It certainly could not have been the utention of the arbitrators, to leave the administrator l ble to pay out of his

Jones v. Blalock.

own means the expenses of the administration of the estate, as those expenses should afterwards be developed or incurred, and to cut him off from any resort to the aforementioned distributive shares, except by a mere personal demand upon the distributees, to be followed up, if refused, by a new suit. We take it, that the arbitrators designed to put an end to litigation, not to increase it; to give fair protection to the administrator, not to put him at the mercy of the distributees. And our conclusion is, that under the submission and award, the distributive share of the slaves allotted to the complainant is not exempt from liability to the judgment and from its power, until she has made either an actual payment, or an actual tender, of all the sums of money which the award requires her to pay, including her ratable portion (that is, one-fourth) of *the expenses of the administration*. If such payment or tender has been made, then the judgment cannot be properly enforced further as against her or her distributive share, and her distributive share becomes her absolute property, as against the parties to this suit.

3. If such payment was made by her before the judgment was rendered, and she, without fault on her part, was prevented from availing herself of it in that suit, by the fraudulent conduct of the administrator in withholding from the circuit court that part of the award which allots the slaves and damages mentioned in the judgment into the four distributive shares, contrary to his agreement with the other parties; then, as she cannot, upon such a state of facts, by *supersedeas* or otherwise, obtain an entry of satisfaction or discharge *pro tanto* in a court of law, (Burt v. Hughes, 11 Ala. R. 571,) she may go into a court of chancery, to establish the part of the award so withheld by the administrator, and to enjoin any further proceeding under the judgment, against her or her distributive share. And so she may go into chancery for a like purpose, if, since the judgment, she has paid all of the sums of money required of her by the award, except her ratable portion of the expenses of the administration, and she is ready to pay that portion as soon as it can be ascertained,

and is rendered unable to pay it by reason of the fact that these expenses are not yet fully developed, or other like reason, and the administrator is attempting to enforce against her the judgment for expenses of the administration not fully developed or not paid by him. And, in short, the bill filed by her in the present case contains equity, because, upon the facts stated in it, she cannot, by any proceeding at law, obtain all that it was the object of the award to give her, and she is, therefore, entitled to resort to a court of equity for a specific performance of the award, and for the protection of that court until the award can be specifically performed.—Kirksey v. Fike, 27 Ala. R. 383; McNeill v. Magee, 5 Mason's Rep. 244; White & Tudor's Leading Cases in Equity, vol. 2, Pt. II, page 109.

Whether the facts stated in her bill be true or not, we do not now undertake to determine. As the chancellor sustained the demurrer to the bill for want of equity, we confine ourselves to the question whether the bill contains equity. In considering that question, we treat the allegations of the bill as true; and if they are true, the bill is not wanting in equity. How the case may turn out on a trial on the pleadings and proofs, is not a matter for our consideration at this time.

The chancellor erred in sustaining the demurrer, and dismissing the bill for want of equity. His decree is, therefore, reversed, and the cause remanded. The costs of this court must be paid by John C. Blalock, the administrator.