# Black v. Woodruff.

## Bill to Rescind a Contract.

(Decided April 8, 1915. Rehearing withdrawn June 15, 1915. 69 South. 97.)

1. *Specific Performance; Supplemental Bill; Award; Enforcement.* —Where the parties to the original bill agreed in writing for a rescission of the contract for the sale of land, and for an arbitration of the amount which respondent should pay complainant as reimbursement for payment on purchase price and improvements after deducting rent, and what purported to be the award of the arbitrators was filed with the register, but the court refused to enter it as its decree because no preliminary order authorizing it had been granted, a supplement bill filed by complainant setting up the agreement and award as a common law arbitration and praying the court to put it into effect by its final decree in the cause, proceeded upon the same equity of the original bill and was properly allowed as a continuation thereof.

2. *Same; Enforcement of Award.*—An award by arbitrators made in a cause seeking to rescind a contract for the sale of land may be enforced by specific performance notwithstanding because of a failure to have a preliminary order of the court authorizing it, such award could not be entered as the decree.

3. *Same.*—Where the award as made did not express the actual decision of the arbitrators it could not be specifically enforced; the arbitrators having returned an award in two separate papers, one of which determined that respondent should pay to complainant a certain sum with half of the cost of the arbitration, and certain witness fees, and the other determining that complainant should pay to defendant a certain small sum as rent, and half the cost of arbitration, and certain witness fees, the two sums being added and the amount which plaintiff had to pay being subtracted therefrom, and the result filed as the award.

4. *Same; Conclusiveness of Award; Direct Attack.*—While the award of arbitrators entered in a pending suit is not open to a

collateral attack, its correctness may be attacked in a proceeding for its specific enforcement, although such defense is not brought forward by cross-bill.

5. *Arbitration and Award; Conclusiveness; Impeachment.*—An award of arbitrators may be impeached for their mistake in setting down their conclusion, notwithstanding such mistake appears dehors the award only.

6. *Same.*—A party to an award of arbitrators is under no obligation to be present when the award is made, and a failure to be present does not estop him from attacking its correctness.

7. *Same; Modification.*—Where arbitrators have returned an award in a pending cause, they are powerless to subsequently modify it, as their authority ceases upon the return of the award to the court.

APPEAL from St. Clair Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Original bill by W. W. Woodruff against H. H. Black, to rescind a contract of purchase, with supplemental bill to enter as a decree and enforce the award of arbitrators in the matter of the original bill. From a decree specifically enforcing the award, respondent appeals. Reversed and remanded.

BURGIN, JENKINS & BROWN, for appellant.

JOHN W. INZER, J. A. EMBRY, and GOODHUE & BRINDLEY, for appellee.

SAYRE, J.—Woodruff filed the original bill in this cause, charging that a certain contract by which he became the purchaser of a tract of land had been imposed on him by the fraud of Black, and praying that the contract be rescinded, and an accounting had of payments, rents, etc. After Black had answered the bill denying circumstantially its averments of fraud, the parties entered into an agreement in writing for rescission and the execution of the papers necessary to accomplish that result, and, to state its further effect in a general way, for an arbitration which would de-

termine what amount, if any, Black should pay to Woodruff for his reimbursement on account of payments made on the purchase price, improvements, taxes, etc., after deducting the reasonable value of the rents for the period during which Woodruff had held possession under his purchase, and some other items to be credited to Black. The agreement was entered into on December 31, 1912. For the purpose of putting one item of disagreement out of the way, it may be here noted that Woodruff agreed to keep the place during the year 1913 at a reasonable rental as the tenant of Black; but it was not submitted to the arbitrators to determine what a reasonable rental for the future term should be, nor was it contemplated that the rental for that term should figure in the award. It was further provided that the finding should be returned to the chancery court, and should become the decree of the court in the pending cause. But no order of court was obtained authorizing the submission to arbitrators, and for this reason there was no arbitration according to the statute, and the court acquired no power to summarily translate the finding into a decree.—*Dudley v. Farris,* 79 Ala. 187.

(1) A paper purporting to be an award of the arbitrators was filed with the register, and Woodruff moved the court that it be entered as the court's decree in the pending cause; but the court, taking the view of the arbitration indicated above, denied the motion. Thereupon Woodruff filed his amended or supplemental bill setting up the agreement and the award as a common-law arbitration, and praying the court to put the agreement and the findings of the arbitrators into effect by its final decree in the cause. Black demurred to this supplemental bill, taking two grounds against

it: (1) The matter was not proper for a supplemental bill, but should have been brought forward by an original bill; (2). The award was a nullity. The second ground was well taken.

The submission to arbitrate, containing an agreement that the award, unless performed by the parties within 30 days, should be made the decree of the court, though ineffectual as an agreement for arbitration under the sanction of the statute, did not defeat the pending bill.—*Henry v. Porter*, 29 Ala. 619. One clear purpose of the agreement was that it should not defeat the bill. The purposes or agreements of parties cannot be permitted to divert the administration of justice from its orderly channels; but one proper office of a supplemental bill is to bring forward matter relating to the case made by the original bill, but arising subsequent to the filing of such bill, to show a new interest vested in an old party, or to show that what was an inchoate has become a perfect right—*Barringer v. Burke*, 21 Ala. 765; *Bowie v. Minter*, 2 Ala. 406; *Walker v. Hallet*, 1 Ala 379; Fletcher, Eq. Pl. & Pr. §§ 825, 826. A supplemental bill was always in the nature of an amendment, and now under our rule facts occuring after the filing of a bill may be introduced by an amendment. Chancery Court Rule 45. Equity cannot by supplemental matter be injected into a bill that before had none.—*Schreerer v. Agee*, 113 Ala 383, 21 South. 81. But the supplemental bill in this cause preceeded upon precisely the same equity as the original bill, though to be proved in a different way, and was properly allowed as a continuation of the original bill. Perhaps the same result would have been attained on the principle of *Durr v. Hanover Bank*, 170 Ala. 260, 53 South. 1012.

We are not of opinion that the award was wholly lacking in obligation because of the failure to have an order of the court authorizing it. The effect and operation of the agreement must be determined by reference to the terms of the instrument and what the parties did under it. The arbitrators were to proceed after the manner of arbitrators under the statute, and they were to return their award into the chancery court, where it was to become the decree of that court. By order the parties failed to arm the court with the power to establish the award summarily as the decree in the cause. But it was competent for the parties to agree that the arbitrators should proceed in the manner provided by the statute, though they were to have no authority under the statute. By common consent laying their respective contentions before the arbitrators, in the absence of a preliminary order inviting an award as to the matters in dispute, the only rational conclusion is that the parties intended to appeal to the general powers of the court for its enforcement, if necessary. There is nothing in the contract itself compelling a different interpretation, nor is there any reason why the contract should not by due process be enforced according to the construction placed upon it by the parties themselves. To enforce its specific performance is not to make a contract for the parties, but on the contrary, is to bind them to the very agreement they made. This seems to be the reasoning of the court in the closely analogous case of *Davis v. McConnell*, 3 Stew. 492. See, also, *Lamar v. Nicholson*, 7 Port. 158. The submission to arbitration was a matter of contract within the competency of the parties, and such an adjustment of controversies, whether they have or not assumed the form of pending suits, has al-

ways been favored by legislation and judicial decision in this state,—*Burns v. Hendrix*, 54 Ala. 80. The policy of arbitration is imposed upon the legislature by section 84 of the Constitution. The nature of the agree- ment here, in so far as it without more determined that a rescission should be had, was such as to require for its enforcement a remedy peculiar to the court of chan- cery, and the supplemental bill properly invoked that remedy to the end that the whole matter might be con- cluded by one decree.—*Kirksey v. Fike*, 27 Ala. 383, 62 Am. Dec. 768; *Jones v. Blalock*, 31 Ala. 180.

(3) But, on consideration of the facts to be now sta- ted, we are of the opinion that the arbitration should be held for naught, and that the chancery court com- mitted error in decreeing the specific performance of the agreement and award set up by Woodruff in his sup- plemental bill. It is established by the undisputed evi- dence in this case that on the second day after the ar- bitrators heard the parties they prepared a statement of their conclusions on two separate papers as follows:

"Feb. the 4................................ ward ........................... 1913. We the arbitrators agreed that H. H. Black pay to W. W. Wood- ruff the sum of $3,540.10 dollars and pay half of the cost of the arbitration and pay his witnesses one $1.00 per day.

"Feb. the 4................................ ward ...........................1913. We the arbitrators agreed that W. W. Woodruff pays to H. H. Black the sum of $1246.00 for rent and pay half of the cost of the arbitration and pay his witnesses one $1.00 per day."

There is some conflict in the testimony as to whether the arbitrators signed these papers, and we leave that circumstance undetermined. But we find in the record no reason for doubting that both papers were prepared

as together expressing correctly the conclusion reached, nor any for supposing that together they were not intended to express the conclusion that Black was to pay to Woodruff only the difference between the two sums named in the different papers. The arbitrators have so deposed, and, notwithstanding what remains to be noted in this connection, we are impressed with the truthfulness and correctnes of their testimony so far as concerns the main fact in controversy, though they may be mistaken in respect of some nonessential circumstances. Black also gave testimony tending to support the theory of mistake in the preparation of the award to which we shall presently come. His testimony is, and it does not appear to be seriously challenged, that he kept a memorandum of the items claimed by Woodruff on the hearing before the arbitrators, and that the sum of all such items was less by several hundred dollars than the sum of the amounts named in the two papers. Nevertheless, when the arbitrators, after giving notice to the parties, came to the time and place appointed for the preparation of the final statement of their findings, Black being absent and unrepresented, all of them being unaccustomed to business of that nature and of limited education, one of them unable to write his name, it was suggested that one of the attorneys for Woodruff should prepare the formal statement of award, and he undertook to do so. He prepared the paper that was later in the day filed by the arbitrators with the register in chancery as their award in the cause, the award of which Woodruff seeks specific performance in his supplemental bill. The paper so prepared declared that Black was indebted to Woodruff in the gross sum of $4,786.10, which sum was reached by adding the sums

shown by the two papers, whether taken from the papers or not, and on this Black was allowed a credit for the sum of $1,246. It may be that the arbitrators produced to the attorney only one of the papers they had previously prepared, that one which declared that Black should pay to Woodruff the sum of $3,540.10. If only the paper first above set out was produced, it carried upon its face value the suggestion that it was not a complete statement of the agreement reached, for it made provisions for only one-half of the costs; and at least it is indutiably true that one of the arbitrators had another paper in his hand, and that memtion was made of the fact that there had been a finding that Woodruff was to pay Black the sum of $1,246.

The controversy as to whether the paper filed with the register truly represented the agreement of the arbitrators has arisen out of the inquiry whether they intended that this sum of $1,246 should be subtracted from the sum of $3,540.10 in order to arrive at the net sum due from Black to Woodruff, or whether they intended that Black was indebted to Woodruff in the gross sum of $4,768.10, from which $1,246 was to be subtracted. The attorney prepared the award and read it over to the arbitrators, paragraph by paragraph as it was prepared, and they signed it. This, of course, tends strongly to establish the paper as a true memorial of what the arbitrators intended, and the result ought not to be disturbed except upon grave consideration of all the circumstances. But upon the whole evidence, of which we have stated only the outlines, we feel confident that the arbitrators did not intend to fix $3,540.10 as the net amount due from Black to Woodruff, but that their purpose was to award that sum, less $1,246, and that the attorney himself was led by

their blundering statements of what they had done, and by their lack of understanding of what he was doing, into a misapprehension and incorrect statement of the result they intended to express. Thus we are able to reconcile the testimony of all the witnesses without imputing intentional wrong to any of them. To hold otherwise would be to convict the arbitrators of flat perjury, and we feel strongly that such a conclusion would not be justified.

To meet this state of the facts, counsel for appellee rely upon two propositions of law which may be stated as follows: That the attack upon the award is collateral and available to defendant, in his situation, by cross-bill only; that as matter of substantive law, the award is conclusive against the defense however presented.

(4) It is firmly settled that the judgment of a court of competent jurisdiction cannot be impeached in any collateral proceeding. A closely applied principle is that a mistake in the rendition of entry of a judgment can be taken advantage of in a direct proceeding only.—1 Black on Judgments, § 262. A proceeding to enforce a judgment is collateral to the judgment, and will admit no inquiry into its regularity or validity. 23 Cyc. 1064. This means, of course, that the defendant in such proceeding, if he would draw the judgment into question, must file his cross-bill. The cases frequently liken the award of arbitrators unto a judgment of a court, and they say that an award cannot be assailed collaterally.—*Brewer v. Bain,* 60 Ala. 153. But evidently an award is not as sacred against inquiry as the judgment or decree of a court, for, to obtain the judicial mandate for execution, an award must be translated into terms of judgment or decree, and this,

in the case of a common-law award, can only be done by an adversary proceeding inter partes raising the question whether it is in law and fact entitled to become the basis of judgment or decree. Now the ground upon which the jurisdiction to enforce the specific performance of an award is entertained is said by Judge Story to be that "it is but an execution of the agreement of the parties, ascertained and fixed by the arbitrators."—*McNeil v. Magee,* 5 Mason, 244, 256, Fed. Cas. No. 8,915. So Chief Justice Baker of the Massachusetts court says that the subject, on its "true footing," is "the specific performance of a contract in writing; for the submission is the agreement. It is virtually a contract to do what shall be awarded."—*Jones v. Boston Mill Corp.,* 4 Pick. (Mass.) 515, 16 Am. Dec. 538. This status and character of the proceeding to enforce an award in equity has been recognized fully by this court.—*Bumpass v. Webb,* 4 Port. 65, 29 Am. Dec. 274; *Kirksey v. Fike,* and *Jones v. Blalock, supra, Caldwell v. Caldwell,* 157 Ala. 119, 47 South. 208. And everywhere, it seems, the remedy of specific performance of award is assimilated to remedies for the enforcement of contracts.—3 Cyc. 790. But a bill seeking specific performance is addressed to the sound discretion of the court, and by his answer in such case the defendant, seeking no affirmative relief, may show that in equity the contract should not be enforced.—*Billingsley v. Billingsley,* 37 Ala. 425; *Sims v. Mc-Ewen,* 27 Ala. 184; Sims, Chan. Pr. § 643. Here defendant asks no active relief. His defense is simply this, that it would be inequitable on the facts, specifically averred in the answer and established in the proof to decree the execution of the award. This is strictly an equitable principle, and cannot be availed of at law,

as was decided in *Georgia Home Ins. Co. v. Kline,* 114 Ala. 366, 21 South. 958, cited and relied upon by appellee. As for *Brewer v. Bain,* 60 Ala. 153, also cited in this connection, the decision, so far as pertinent to this point, was that the complainant, against whose bill for an accounting an award was pleaded, could not proceed without replying to the plea, but must impeach the award by amending his bill so as to have it state specifically the grounds of impeachment; this for the reason that the defendant in such case has the right to be informed by the pleading what objections are relied upon to defeat the award and reopen the controversy it was intended to close, and because proof without pleading will no more authorize relief than pleading without proof. Neither of these cases is opposed to our conclusion that appellant is entitled to a hearing on his defense, though brought forward by answer without a cross-bill. The attack is direct; the facts are averred with simple particularity.

(5) It remains to inquire whether the matters set up in the answer and evidence are to be excluded from consideration on any rule of substantive law. We think it plain that the preparation of the award by the counsel for one of the parties in the absence of the other, a circumstance insisted upon in the answer, was entered upon without due reflection. After arbitrators have come to their conclusion, there is no objection to their availing themselves of professional assistance in drafting their award, provided they do not resort to the counsel of either party. Morse on Arb. 275. But to take advice or assistance of counsel for either party in the absence of the other may even endanger the award. Id. However, we are satisfied that this was an inadvertence on the part of all concerned, and pass

on without further comment, to the matter which, in our judgment, rendered it inequitable on legal principle to enforce the award.

An award may be impeached for corruption, fraud, partiality, or gross misbehavior of the arbitrators; but it is not enough to show error of judgment, or that the matters of difference were unwisely determined.—*Bumpass v. Webb, supra.* To set aside an award for a mistake of the arbitrators as to law or matters of fact in arriving at a conclusion as to what the award ought to be, unless the mistake appear upon the face of the award, would introduce such uncertainty and lack of finality into the system of settling disputes by arbitration as to deprive that method of much of its value. Yet some courts have allowed this, especially where the arbitrators acknowledge the mistake, on the principle that such circumstances furnish ground for an appeal to the court's discretion where the nature of the jurisdiction exercised admits of discretion. Moore, 320. And where it can be clearly shown dehors the award that arbitrators, after arriving at a conclusion, have made a mistake in setting down their conclusion in the final memorial of their award, it seems that a different principle should be applied.

In a case under the title *In re Hall & Hinds*, 2 Man. Gr. 847, strikingly like the case at bar, except that the award was for a sum of money and could be enforced, if at all, only by an action at law, Chief Justice Tindal of the English Court of Common Pleas, on a motion to set aside the award, employed this language: "We cannot, however, help thinking that in a case circumstanced like the present the court must have some power to give a remedy, rather than that so manifest a failure of justice should take place. And it would real-

ly bring the administration of justice, in this particular instance, into scandal and contempt, if such remedy were wanting, or, if existing, it were not applied."

In *Hutchinson v. Sheppeton,* 66 Eng. Com. Law Rep. 955, Lord Denman, C. J., after referring to a case which seemed to indicate that no mistake of an arbitrator could ever be a sufficient ground for setting aside an award, approved the decision *in Re Hall & Hinds,* saying: "Though fully sensible of the propriety of observing the greatest caution in regard to this subject to avoid injuries which would unravel bygone transactions and keep alive the litigation which the parties had hoped to terminate by reference, we cannot think the rule universal and subject to no exception. It is, at most, one for guiding our discretion, which cannot be so absolutely fettered and rendered powerless."

In *Aiken v. Bolan,* 1 Brew. (S. C.) 239, 2 Am. Dec. 660, it was said that an award may be set aside "on account of some mistake, which arbitrators sometimes may fall into without design, by which their award is made to operate in a way they did not intend."

In Moore on Arbitration, 326, commenting on *Hall & Hinds,* the author has this to say: "A distinction certainly ought to be and might be drawn between this description of inaccuracy (misapprehensions as to the meaning or contents of the award) and a mistaken view of a question of fact or evidence, or an incorrect notion concerning a legal principle. Errors of the latter class are customarily called mistakes of the arbitrator, or mistakes in the award. Errors of the former class are certainly mistakes; but in order to distinguish them in language, as they certainly are distinguishable in their intrinsic nature, it would seem well to call them blunders; they are, precisely, blunders in writing out

the decisions; they are not mistakes in the decision it-self. It is not the decision that is wrong, but the mere expression of the decision. The decision may be final, while the expression may be open to correction. To say that a court could not correct such blunders, especially when acknowledged by the arbitrator, would, at least from the point of view of common sense, seem absurd. So needlessly rigid an application of the rule of con-clusiveness would bring the rule itself into that de-gree of discredit that it would soon be shaken, and, as a consequence, would probably be set aside, with very mischievous results, even in the case of mistakes in the decision properly so called."

(6) On these authorities, and the just principle they expound, we think the award in this case should not have been enforced in the equity court. The chan-cellor seems to charge Black with some measure of re-sponsibility for this mistake. We quote from his de-cree: "The question of such mistakes might have been avoided had respondent been present at the time said award was prepared and signed by the arbitrators. He had notice of the meeting of the arbitrators for this purpose, and he declined to be present of his own mo-tion."

Defendant lived at a distance, and this may account for his absence. But, apart from this, he was under no duty to be present. He had presented his case, and had every right to assume that the arbitrators, in mak-ing up their award, would act discreetly and correctly set down the result of their deliberations.

(7) Nor did Black need offer to the court for es-tablishment the amended award which the arbitrators, on being advised of their mistake, filed with the regis-ter. He was on the defensive. No principle of equity

[McDavid v. Bank of Bay Minette, et al.]

required of him that he should propound an alterna-tive on which complainant might have relief in the event the latter failed of that asked in his supplemental bill. Besides, there could be but one award, after the return of which to the court the arbitrators were whol-ly without authority. Nor could the court modify or correct it. Cyc. 769.

For the error indicated, the cause will be reversed, and in order that the complainant may again recast his case, if so advised, the cause will be remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and GARDNER. JJ., concur.