## YOUNG *vs.* LEAIRD.

[BILL IN EQUITY TO SET ASIDE OR SPECIFICALLY EXECUTE AWARD.]

1. *Equitable relief against award on ground of mistake.*—Equity will not set aside an award, on account of a simple error of judgment, on the part of the arbitrators, in the decision of a legal question.
2. *Breach and performance of award.*—Under an award directing one of the parties, who held an absolute bill of sale for a slave, on which was engrafted a parol trust for the other, to give the latter "the benefit of his bill of sale, to the extent of his demand, by assignment, power of attorney, or otherwise, as the parties may think proper," the former may refuse to execute, when tendered to him, a conveyance containing an additional stipulation that he had "made no conveyance of said slave."

APPEAL from the Chancery Court of Barbour.
Heard before the Hon. WADE KEYES.

THIS bill was filed by Lewis J. Leaird against Edward B. Young, alleging that, in 1846, Clealand & Danforth obtained a judgment against one John M. Moore, which Moore enjoined by bill in equity; that complainant became surety for said Moore on the injunction bond in said suit; that Moore, being about to remove from the country in 1848, placed a slave in the hands of Young, "for the purpose of holding complainant harmless in the premises," and Young promised and agreed to hold the slave for that purpose; that in 1850, Moore having in the meantime died insolvent, and judgment having been rendered against complainant on said injunction bond, Young refused to carry out the trust for his benefit, or to indemnify him in any manner; that the matters in controversy between complainant and Young, growing out of these transactions, were submitted to arbitration, and the arbitrators made an award in the premises; that this award is not binding on complainant, "because it was decided against the law, in requiring him to prove that Young had possession of said negro when the bill was dismissed, or could have had the possession of him by the use of due

diligence"; that Young, "without regard to his duty as trustee, and for the purpose of defrauding complainant, has permitted said negro to pass out of his possession since the arbitrament"; that Young "fraudulently concealed from complainant the fact that he had permitted said negro to pass out of his possession, and this fact did not come to complainant's knowledge until after the arbitrament"; and that complainant tendered to Young, for his signature, a conveyance such as the award required him to execute, but Young refused to sign it. The prayer of the bill is, "that said award be annulled, or, in default thereof, that said Young be compelled to a specific performance of the same."

The award, which is made an exhibit to the bill, is as follows:

"In the matter submitted to the undersigned, as arbitrators, between Lewis J. Leaird and Edward B. Young, they find the following to be the facts: That Clealand & Danforth recovered a judgment against John M. Moore, which Moore enjoined by bill in equity, with Leaird as his surety on the injunction bond; that Moore, while this suit in equity was pending, made an absolute bill of sale for a negro boy to Young, the intent and meaning of which was, that the negro was to be sold by Young, in case it should become necessary to pay Young a debt due to him by Moore for about $80, and the balance be applied to the Clealand & Danforth judgment, should the same be recoverable out of Moore by a dismissal of his bill; and that the negro has been run off to parts unknown to Young, without his knowledge or permission, and is not within his reach. Upon these facts we decide, that Young did not have the right of possession and sale of the negro, until the bill in equity was dismissed; and that the question is, whether Young, after the dismissal of the bill, could have obtained possession of the negro by the exercise of due diligence. There is no evidence upon this point; and it being Mr. Leaird's duty to establish this point, and thereby show a breach of duty by Young as trustee, the arbitrators decide, that Mr. Young is not liable, upon the evidence, to pay Mr. Leaird the amount

advanced by him on the Clealand & Danforth judgment. But, if within the scope of our power, we direct Mr. Young to give Mr. Leaird the benefit of his bill of sale, to the extent of his demand, by assignment, power of attorney, or otherwise, as the parties may think proper; Young not to be held responsible for good title to the negro, if it should be found that Moore's title to him was not good at the time the bill of sale was made to Young. Witness our hands and seals," &c.

The instrument tendered by Leaird for Young's signature, which is also made an exhibit to the bill, is as follows:

"In accordance with the direction of the arbitrators in the case submitted by Lewis J. Leaird and myself on the 2d inst., I hereby assign, relinquish, and set over to said Lewis J. Leaird, all of my right, title, and interest, of, in, and to a certain slave, named Moses, conveyed to me, by absolute bill of sale, by John M. Moore in his life, for the purpose of securing a debt to me of about $80, and a judgment against said Moore in favor of Clealand & Danforth; which said judgment, since said conveyance to me, has been paid by said Leaird, as surety of said Moore. Said Leaird, if he recovers said slave, is to appropriate him, first, to reimburse himself the amount paid out by him as surety as aforesaid; and the balance to be paid over to me, in discharge of said $80. And I do covenant with said Leaird, that I have made no conveyance of said slave, or of the interest in him conveyed to me by said absolute bill of sale. Witness my hand and seal," &c.

A demurrer to the bill, for want of equity, was overruled by the chancellor, who, on final hearing, on bill, answer, and proof, rendered a decree for the complainant; and his decree is now assigned as error.

James L. Pugh, for the appellant, contended that the award was a bar to the relief sought by the bill; citing to this point the following cases: Bumpass v. Webb, 4 Porter, 65; Morris & Overton v. Ross, 2 H. & M. 408; Underhill v. VanCortlandt, 2 Johns. Ch. 339; Todd v. Barlow, 2 Johns. Ch. 551.

E. C. BULLOCK, *contra*, cited Watson on Awards, 162; Corneforth v. Geer, 2 Vernon, 705; Morgan v. Mather, 2 Vesey, 15; Torrance v. Amsden, 3 McLean, 509; Hewitt & Russell v. The State, 6 Har. & John. 95; United States v. Ames, 1 Woodbury & Minott, 76; Wickoff v. Coxe, 1 Y. 353; Williams v. Craig, 1 Dallas, 315.

STONE, J.—In Morgan v. Mather, 2 Veser, jr. 15, the lord chancellor stated, that *corruption, misbehavior*, and *excess of power*, were the only three grounds for setting aside an award.

Chancellor Kent, in a well-considered opinion, after reviewing many authorities, English and American, arrives at the conclusion, that the above are the usual and main grounds for setting aside awards; but he quotes, with apparent approbation, an opinion of Lord Hardwicke, that relief will be granted in cases of "palpable mistake; as in the instance of a miscalculation in an account, or of a mistake in a plain point of law." * * "The mistake," adds the distinguished chancellor, "intended by those cases, is a mistake as to figures, or one thing or fact for another, and does not mean or apply to error of judgment, in its fair exercise upon a subject."—Underhill v. VanCortlandt, 2 Johns. Ch. 361.

This court, in the case of Bumpass v. Webb, held, that it is not enough that the matter of difference was unwisely determined, or that the arbitrators were betrayed into an error of judgment. To avoid their award, they must have been guilty of *corruption, partiality*, or *gross misbehavior.*— 4 Porter, 65, 70.

The numerous decisions on this question are not entirely in harmony. The weight of them, however, as well as the reasons on which they rest, distinctly and forciby affirm the doctrine, that awards will be upheld, unless the arbitrators are guilty of palpable misconduct, or corruption, or fall into a gross mistake, which they themselves would correct. See the authorities on the briefs of counsel.

Arbitration is a cheap and convenient form for the adjustment of disputes. Parties select their own judges; and both precedent, and the good of society, demand that

courts should go far to uphold their decisions. If they are liable to be set aside for every mistake of law, they no longer diminish, but rather increase litigation. The establishment of such a principle would be to constitute the arbitrators (usually unskilled in legal science) a court of primary jurisdiction, whose decisions on questions of law are always subject to review in chancery.

We have said thus much on the general question of the conclusiveness of awards. The only averment in the bill on which we can be asked to review the award, is found in the 10th paragraph. It asserts, that the controversy was decided by the arbitrators "against the law." Looking into the award, which is made an exhibit to the bill, we discover that the arbitrators attained the conclusion, that the burden of proof was on Leaird, to show that Young could have obtained possession of the slave by the exercise of due diligence; and they further decide, "that Young did not have the right of possession and sale of the negro, until the bill in equity was dismissed." It is here contended, that inasmuch as Young had an absolute bill of sale to the slave, the arbitrators erred in the settlement of this legal question. The rights of complainant do not arise out of the bill of sale. That gives the entire property to the appellant. If Leaird have any rights, they are outside of the bill of sale; a trust engrafted upon it by parol proof. We cannot know that, under the contract, modified and explained by the parol proof, Young had the right to the immediate possession of the slave. Like many other mortgages or trusts, it may have been part of the agreement, that the slave should remain with Moore until some future event. The slave had been run off to parts unknown, without the knowledge or permission of Young. This may have been done before his right to the possession accrued. As there is nothing in the award which shows that this was not the case, we feel it our duty to presume its existence, in favor of the correctness of the award.

But, even if the arbitrators had mistaken the law in the particular supposed by the bill, we are not prepared to say that such mistake would justify us in setting their

award aside. It would present nothing more than a simple error of judgment; and, as we have shown, that will not authorize the relief prayed for.

Neither has the appellant forfeited his right to rely on the award as a defense, by his refusal to execute the conveyance tendered to him. The award directed Young to give to Leaird "the benefit of his bill of sale, to the extent of his demand, by assignment, power of attorney, or otherwise, as the parties may think propor." The conveyance tendered by Leaird, for Young's signature, contained a covenant that he, Young, had "made no conveyance of said slave," &c. This was beyond the requirements of the award, and justified Young in refusing to execute it.

If the instrument had corresponded precisely with the award, and Young had refused to execute it, should not Leaird have sued him for the breach? Would this give him a right to fall back on the original demand? We simply state these questions, without deciding them.

We have considered this case on the face of the bill alone. It contains no equity, and can derive no support from the answer or proofs.

The decree of the chancellor is reversed, and a decree here rendered, dismissing the complainant's bill. Let the appellee pay the costs of this court, and of the court below.

This decree takes effect as of June term, 1856, the time when the case was submitted.