FORQUERON and Another *v.* VAN METER.

> Where arbitrators were not sworn, and their award was not in writing, in ac-
> cordance with the statute (R. S. 1843, p. 788), but the defendant, in view of
> all their proceedings, gave his note for the amount of the award,—*held*, that
> he could not say that the arbitration was a nullity.
> The arbitration was valid as a common-law proceeding.
> In a suit upon a promissory note given for the amount of an award, an admis-
> sion made by the defendant in the written agreement to arbitrate, will be
> taken as true.

*Saturday,*    APPEAL from the *Cass* Court of Common Pleas.
*June 6.*
DAVISON, J.—This was an action by *Willam A.* and *John
D. Forqueron* against *Lewis Van Meter*, upon a promissory
note for the payment of 85 dollars and 64 cents.

The defendant answered, 1. That the note was without
consideration.  2. That it was obtained by fraud, &c.

Verdict for the defendant.  New trial refused, and judg-
ment.

The proofs in support of the answer, were as follows:
One *Jacob Van Meter* was the owner in fee of a certain
tract of land in *Cass* county, which included a meadow lot
containing eight acres, enclosed by a fence.  On the 10th
of *March*, 1848, an agreement was entered into between
him and the defendant, *Lewis Van Meter*, whereby he,
*Jacob*, leased to him, *Lewis*, the said meadow lot for the
term of three years from the said 10th of *March*.  In and
by the lease, *Lewis* stipulated that he would take all the
timber off the eight acres, within the three years; that at
the expiration of the lease, he would leave the fence which
enclosed the lot in as good repair as it then was.  And
also, that he would leave the ground in timothy meadow.

The parties deposited the agreement with one *Peter Chidestie*. Pursuant to this lease, *Lewis* went into possession of the demised premises, and occupied them during said term. In *November*, 1853, the plaintiffs purchased the tract of land, which included the meadow lot, of *Jacob Van Meter*, from whom they received a deed in fee. After this, a controversy, as to whether the defendant had fulfilled the above agreement, arose between him and the plaintiffs. And to the end that the same might be settled, they, the plaintiffs, and the said defendant, entered into a written agreement, called an arbitration bond, whereby they became mutually bound to each other in the penal sum of 200 dollars, to abide the award of *John Fry* and *William Rucker*, who were by the parties chosen as arbitrators, and who were, in case they should disagree, empowered to appoint an umpire. The arbitration bond recites that the plaintiffs are the assignees of the lease, and stipulates that "the damages are to be assessed from and after the 22d of *November*, 1853, viz., the damages that the plaintiffs sustained by reason of the contract not being fulfilled;" that the award should be final, and be made a rule of the Court of Common Pleas of *Cass* county, unless a note was given for the amount awarded.

The arbitrators proceeded, in the presence of the parties, to examine the case submitted to them, without being sworn. Something was said about their being sworn, but it was omitted. With the consent of plaintiffs and defendant, they examined the leased premises in order to satisfy themselves from personal inspection as to the damages. They examined but one witness, and him only as to the condition of the fence when the defendant took the lease. The defendant offered no witnesses. He talked of doing so, but an objection being raised by the plaintiffs' agent, he declined offering any testimony. Having completed their investigation of the case, they rendered an award against the defendant for 85 dollars and 64 cents; for which sum he executed the note in suit. Before the defendant gave his note, one *Lewis Boyer*, who had acted before the arbitrators as agent for the plaintiffs, told him that it would be

"better to give the note than to have to pay 200 dollars, the penalty of the bond." After the note was given, the defendant told one of the plaintiffs, who was about leaving for *Virginia*, to leave it in the neighborhood, so that he could pay it.

Upon these proofs, it is insisted that the arbitration was of no validity, and being so, the note sued on is without consideration. This ground is not well taken. True, the arbitration was not in accordance with the statute—the arbitrators were not sworn, nor does it appear that the award was in writing (R. S. 1843, p. 788)—still we must presume that the defendant was legally cognizant of his rights, and having given his note for the amount of the award, in full view of all the proceedings before the arbitrators, it is not for him to say that the arbitration was a nullity. Indeed, it was valid as a common-law proceeding. 2 Greenl. Ev. ss. 69, 75.—*Perkins* v. *Wing*, 10 Johns. 143.—*Titus* v. *Scantling*, 4 Blackf. 89.—*Smith* v. *Stewart*, 5 Ind. R. 220.—4 Blackf. 44.

Again, it is said that the plaintiffs were not shown to have been the owners of the lease—there being no proof that it was ever assigned to them. To this we answer, that the defendant, in the agreement to arbitrate, expressly admits "that the plaintiffs are the assignees of the lease, and the admission thus made must be taken as true.

Upon the trial in the Common Pleas, each party produced evidence relative to the question whether the defendant had or had not performed the covenants in the lease. This evidence was submitted without objection, and is, to some extent, conflicting; but the jury must have regarded it sufficient to sustain the first defense, because if the defendant had fully complied with the requirements of the lease, there could be no foundation for the award, and consequently no consideration for the note. In looking into the evidence adduced on the trial, we are not inclined to hold the conclusions of the jury so clearly wrong as to authorize this Court to disturb their verdict.

*Per Curiam.*—The judgment is affirmed with costs.

*D. D. Pratt* and *S. C. Taber*, for the appellants.