WILLINGHAM AND WIFE vs. HARRELL.

[BILL IN EQUITY TO SET ASIDE AWARD.]

1. *Waiver of objection to award.*—A court of equity will not set aside an award, on account of an objection of which the complainant was fully advised at the time he executed it.

2. *Allegations of bill.*—In a bill to set aside an award, a general charge that the arbitrators "were guilty of fraud, partiality and corruption," without a specification of particulars, is wholly insufficient.

3. *Distinction between statutory and common-law arbitrations; oath of arbitrators.*—The fact that the matters submitted to arbitration were at the time involved in pending suits, is not sufficient to show that the submission is under the statute, (Code, §§ 2709–10,) when the stipulations of the parties, and the proceedings of the arbitrators, are both at variance with the provisions of the statute; and when the arbitration is not under the statute, there is no rule of law requiring the arbitrators to be sworn.

4. *Return of award to court.*—When the arbitration is not under the statute, and there is no agreement that the award shall be returned into court, it is not necessary that it should be so returned, although the matters submitted were at the time involved in pending suits.

5. *Laches.*—A court of equity will not set aside an award, on the application of a party who, more than two years before the filing of his bill, voluntarily paid more than one-half of the amount found against him by the arbitrators, and gave his notes for the residue; and who, if he had exercised ordinary prudence and circumspection, would have been fully informed before he executed it of the existence of the facts on account of which he seeks to set it aside.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed, on the 12th June, 1858, by Benjamin C. Willingham and wife, against Josiah J. Harrell and wife, for the purpose of setting aside an award. Mrs. Willingham, prior to her marriage with the said Benjamin C., was the widow of Warren A. Brantley, deceased, who died in August, 1838; and had also qualified as executor of his last will and testament, and as

guardian of her two infant children by him, Louisiana and Warren Brantley. On her marriage with said Willingham, which took place in March, 1847, the latter became administrator and guardian in right of his wife, and from that time acted jointly with her in the management of both trusts. On the 21st March, 185–, (the date is left in blank in the bill, and is not supplied by any other part of the record,) said Louisiana Brantley was married to Josiah J. Harrell. On the 17th October, 1855, Harrell and wife filed two bills in chancery against Willingham and wife, to compel them to settle their administration and guardianship. On the 20th October, 1855, said Harrell and Willingham, each professing to act for himself and his wife, entered into a written obligation, under seal, to submit to arbitration the matters involved in these two suits. The submission stipulated, that each party should select one arbitrator, with power to the persons so selected to choose a third; and, after stating the principles on which the account should be taken, and providing that the arbitrators should not examine either of the parties without the consent of the other, proceeded as follows: "All other points and matters connected with said estate and guardianship, not herein provided for, if not settled by the parties hereto, are to be settled by said chancery court, under the bills, answers and proof; and should either party fail or refuse to carry out or abide by the foregoing articles and this agreement, then the said chancery court is authorized to carry out and execute the same, according to their true intent and meaning, and to make said settlements in conformity thereto, so far as is herein provided for; and as to matters not herein specifically provided for, said court will settle according to the rules and principles of courts of equity in this State." Under this submission, on the 21st November, 1855, the arbitrators stated an account between the parties, and awarded the sum of $33,038 as the balance due from Willingham to Harrell.

The bill alleged, that the arbitration was made under the statute; and that the award of the arbitrators was irregular, illegal and void, for the the following reasons:

Willingham and Wife v. Harrell.

"1.—The said arbitrators, in making said award, were guilty of fraud, partiality and corruption: 2.—The said arbitrators were not sworn as required by the statute, nor were they sworn in any other manner as such arbitrators. 3.—The said arbitrators refused to allow W. F. Harrell and said complainant Benjamin C. to appear before them as witnesses to prove the ages and hires of the negroes, as had been agreed between the parties to said arbitration, but, at their own option, called before them the overseer, who was a comparative stranger to the slaves, and the slaves themselves, one at a time, and examined them, and adjusted the hire of each upon such observation and evidence of the overseer. 4.—The said arbitrators refused, when sitting as aforesaid, to let said Willingham or said Harrell go before them,—they being the parties to said submission, and entitled to be sworn and give evidence. 5.—The said arbitrators placed an enormous hire upon the slaves, and compounded interest upon it annually, without any legal rests; in fixing the hire of the slaves, they paid little (or no) regard to their ages, sex or condition,—charging complainant with $9,000 more than he ought to be charged with. 6.—The said arbitrators placed an enormous and unwarranted rent upon the lands of said Warren A. Brantley, not regarding the quantity cleared from year to year, rating it too highly, allowing complainant nothing for the improvements upon the same, and charging him too much by $3,000 in the aggregate. 7.—They gave complainant no credit for $2,000, which he and his said wife paid on their testator's purchase of his real estate after his death. 8.—After said award was made, no return thereof was made to said chancery or other court. 9.—After making said award, said arbitrators never furnished complainant with a copy thereof; and he never saw it, or knew of its contents and details, until about April last,—having attempted to perform it, to the extent above stated, upon verbal information as to its aggregate amount from some of the parties, attorneys, or arbitrators." (The acts of part performance of the award alleged in the bill, being stated in the opinion of the court, it is not necessary to repeat them here.)

The chancellor dismissed the bill, for want of equity; and his decree is here assigned as error.

D. W. BAINE, with GEO. W. GAYLE, and PETTUS, PEGUES & DAWSON, for the appellants, cited Watson on Arbitration, 262, 294; Russell on Arbitration, 672, 674.

BYRD & MORGAN, *contra*, cited Sharpe v. King, 3 Ired. Eq. 402; Johnson v. Ketchum, 3 Green's Ch. 364; McRae v. Buck, 2 Stew. & P. 155; 3 Atk. 529.

R. W. WALKER, J.—1. The application to set aside the award is based upon nine distinct grounds, which are stated in numerical order in the bill. Of the existence of three of these objections to the award the complainant was fully advised at the time he proceeded to execute it. Of course, these objections are worthless as a foundation for such an application.

2. The six grounds of objection, of the existence of which the complainant alleges that he was ignorant when he performed the award, are those which are numbered in the bill as the 1st, 2d, 5th, 6th, 7th and 8th. The 1st is a general charge, that " the arbitrators were guilty of fraud, partiality and corruption, in making the award." To this objection it is a sufficient answer to say, that in a bill to set aside an award, the particular ground on which it is impeached ought to be charged with all its circumstances. Russell Arb. 676; Tittenhouse v. Reat, 3 Atk. 529. A general charge of fraud, partiality and corruption, without specification of particulars, is wholly insufficient.

3. The 2d objection is, that the arbitrators were not sworn. Without intending to intimate that there may not be other satisfactory answers to this objection, we mention one which we consider conclusive—that is, it was not necessary that the arbitrators should be sworn. It is obvious, we think, that this cannot be considered as an arbitration under the Code. Though the matters submitted were involved in suits then pending, there was no agreement that the submission should be, nor was it, made an order of court; and contrary to the rule which governs

in statutory arbitrations, it was stipulated that neither party should be a witness without the consent of the other. See Code, §§ 2709, 2718. The proceedings appear to have been conducted throughout without reference to the regulations prescribed for arbitrations under the Code; the arbitrators were not sworn; they refused to allow the parties to the submission to be present; they did not deliver copies of their award to the parties; the award was not returned to the court in which the suits were pending; nor was any attempt made to have it entered up as the judgment of that court. These facts, most of which were known to the complainant before he performed the award, show that the parties did not intend or treat this as a statutory arbitration; and the complainant cannot now insist that it was. As the arbitration was independent of statute, there is no rule of law, which required that the arbitrators should be sworn.—Howard v. Sexton, 4 Comstock, 157; Sloan v. Smith, 3 Cal. 406; Forqueron v. Van Meter, 9 Ind. 207.

4. Another ground of objection is, that the award was not returned to court. We do not perceive how it is possible that the complainant can have been injured by this circumstance. How can he complain that the award was not returned to court, when, without waiting for that to be done, he at once proceeded to execute it? Besides, it was no part of the agreement that the award should be returned to, or be made the decree of the court; and as the arbitration was not under the Code, there was no necessity that it should be done.

5. The other three objections are, in substance—that the arbitrators placed an enormous hire upon the slaves, the aggregate amount charged against the complainant on this ground being $9,000 more than he ought to pay; that the allowance for rent of the land was grossly unreasonable, exceeding by $3,000 what was justly due; and that the arbitrators failed to give the complainants credit for $2,000 paid by them on account of a land purchase made by the testator in his life-time. Passing by the question, whether a court of equity would, under any circumstances, set aside an award for such objections as

these, it is obvious that they can be of no avail in this
suit, for the reason that, if the complainant was not fully
advised of the existence of all of them, at the time he
proceeded to perform the award, his ignorance was the
result of his own gross negligence.   The award was made
on the 21st November, 1855.   A simple inspection of it
would have informed the complainant of the amounts
allowed for the hire of negroes and rent of land, and that
no credit had been given him for the $2,000 paid for land
purchased by the testator.   But, without taking the
trouble to examine the award, which he does not pretend
he ever sought to do, the complainant chose to rely upon
mere verbal information as to the aggregate amount al-
lowed by the arbitrators, and, as early as the 24th No-
vember, 1855, began to pay it off.   On that day, he paid
the defendant $4,000.   Two days afterwards, he conveyed
to the defendant a valuable tract of land, and a house and
lot, and transferred to him sundry notes on third persons,
which conveyances and transfer were made by the com-
plainant, and accepted by the defendant, as a payment to
the extent of $15,699 67 on the award.   He made another
small payment in December.   On the 18th April, 1856,
he executed to the defendant four notes, amounting in
the aggregate to $11,021 00; and on the 26th April,
1856, he made a further payment of about $2,000; the
entire amount thus paid and agreed to be paid by the
complainant being $33,038 00, which is the exact amount
of the award.   Having thus actually paid about two-thirds
of the amount of the award, and settled the balance, by
giving his notes with security therefor, the complainant,
after the lapse of more than two years from the date of
his last payment and of the execution of his notes, files
this bill to set aside the award.  After thus blindly closing
the transaction in pursuance of the award, he has no right
to appeal to a court of chancery to relieve him from the
consequences of his own neglect, by setting aside the
award, upon grounds of the existence of which, if he had
exercised ordinary circumspection, he would have been
fully informed before concluding the settlement.   It must
be a very strong case to justify a court of chancery in

opening an award, after the party making the application has actually paid more than one-half of the amount found to be due by the arbitrators, and settled the balance by giving his notes therefor.—Johnson v. Ketchum, 3 Green's Ch. 364; also, Sharpe v. King, 3 Ired. Eq. 402; Atkinson v. Manks, 1 Cow. 691; Picton v. Graham, 2 Dess. 592; Tyler v. Stephens, 7 Geo. 278; Forqueron v. Van Meter, 9 Ind. 270; Steele v. Kinkle, 3 Ala. 352; McRae v. Buck, 2 St. & P. 155.

The amendments proposed would not have relieved the complainants from the imputation of *laches* so clearly justified by the allegations of the original bill; and hence, they have sustained no injury in consequence of the chancellor's refusal to allow the bill to be amended.

Decree affirmed.