# Brewer *v.* Bain.

### *Bill in Equity for Settlement of Partnership Accounts.*

1. *Statutory provisions as to arbitrations and award.*—Statutory provisions, prescribing the mode of submission to arbitration, and the requisites of an award, are not in abrogation of the common law, unless expressly so declared.

2. *Submission of "matters in controversy;" what is included.*—Under a general submission of "the matters in controversy" between the parties, without any further description, if the parties appear before the arbitrators, and submit their partnership accounts and transactions. this renders certain and definite the subject-matter of the submission, and the award will be referred to it.

3. *Conclusiveness of award.*—An award, valid on its face, may, like a judgment or decree, be pleaded in bar of a subsequent suit founded on the same claim or demand, and cannot be collaterally impeached: if the plaintiff assails its validity, on account of extrinsic facts, he must amend his bill, and state specifically the facts on which he relies to avoid it.

4. *Execution of submission; ratification of unauthorized signature.*—A person who did not himself sign the submission, but whose name was signed by another jointly with his own, and who appeared before the arbitrators, and entered into the arbitration without objection, thereby ratified the signature, if it was unauthorized, and is bound by the award.

5. *Who must make award.*—Under a submission to two persons named as arbitrators, "they to choose a third man, and their award to be final," an award rendered by the two only, without calling in a third, would be void; but, if the matters submitted relate only to personal property, the terms of the submission may be modified by parol; and if the parties appear before the two arbitrators, and agree to dispense with the selection of a third person, an award may be rendered by the two only.

6. *Certainty and finality of award.*—An award must oe certain, and must dispose of all the matters submitted; but, under a general submission of "the matters in controversy" between the parties, an award of a specified sum of money, as due from one to the other, is sufficient on its face; and if the matters actually submitted were certain partnership transactions between the parties, such an award cannot be collaterally impeached, on the ground that it does not decide how the outstanding partnership debts are to be paid, or make any disposition of the partnership property received by one partner in excess of that received by the other, in the absence of appropriate allegations and proof that these matters were brought before the arbitrators.

7. *When award will be set aside, as unconscionable, or oppressive.*—That an award is unconscionable, or oppressive, may be a good ground for setting it aside in equity, at the suit of the losing party, when he is free from all fault or negligence in the matter; but he cannot complain that it works him a wrong or injury, when he failed to adduce before the arbitrators the evidence on which he relies to show such wrong or injury.

8. *When award will be set aside, on account of error in law.*—Errors of law, committed by arbitrators, will not vitiate an award, unless it appears that they intended to be governed by the law, and were mistaken in the application of well established principles.

APPEAL from the Chancery Court of Pickens.

Heard before the Hon. W. A. DILLARD.

The bill in this case was filed on the 21st March, 1871, by John N. Bain, against Raleigh Brewer, and sought an account

and settlement of certain partnership transactions between them in farming during the year 1870. The lands cultivated by the parties belonged to said Brewer, and were situated in Noxubee county, Mississippi, adjoining Pickens county, Alabama, where the parties lived, and where the contract was made. The first contract was dated January 1, 1869, and was in these words : " We, the undersigned, have this day made the following contract : R. Brewer will furnish the land, rent free, and John N. Bain will work the place free of charge ; that is, R. Brewer puts the land against Bain's services, and we go halves in all expenses for the year 1869 and profits," etc.; with particular descriptions of the personal property put in by each, and other stipulations. This contract was signed by both of the parties, and, at the expiration of the year, was renewed for another year. The bill alleged that the partnership had terminated ; that the partnership accounts had never been settled ; that the defendant had exclusive possession of the partnership property, was largely indebted to the plaintiff, and refused to make a settlement. The defendant answered the bill, admitting the execution of the contract, and the cultivation of the land under it during the years 1869 and 1870, but denying that it created a partnership between him and the plaintiff ; and he pleaded, in bar of the relief sought by the bill, that the matters in controversy between them, growing out of the said contract, had been submitted to arbitration, and that the award of the arbitrators was conclusive.

The submission to arbitration, which was dated the 3d January, 1871, was signed by R. Brewer and "J. N. & H. Bain," and was in these words : "We, the undersigned, agree to refer the matters in controversy between us to D. C. Taylor and H. G. Windham, they to choose a third man, and their award to be final." The award of the arbitrators, which was dated the 11th January, 1871, and signed by said Windham and Taylor, was in these words : "We, the undersigned, referees selected by R. Brewer and J. N. and H. Bain to decide and state certain matters between them, have examined the claims and statements of the several parties, and heard all evidence introduced by them. Upon a full hearing of the same, and consideration thereof, [we] agree upon the following statement, which we believe to be just and correct, as near as we could arrive at the same from the evidence and written agreement between the parties, to-wit : amount due R. Brewer to be twelve hundred and eighty-five 61–100 dollars, $1285.61."

On final hearing, on pleadings and proof, the chancellor held, that the award was uncertain, indefinite, unconscion-

[Brewer v. Bain.]

able, and must have embraced matters which were not included in the submission; particularly a claim by the defendant, for damages to his plantation during the years 1869-70, by the decay of houses and fences, the filling up of ditches, etc. He therefore set aside the award, and ordered a reference to the register as to the matters of account; and on the coming in of the register's report, to which there were numerous exceptions, he rendered a decree requiring the defendant to pay into court the sum of $3,126.90, as the amount due from him to the complainant. From this decree the defendant now appeals, and here assigns as error—1st, that the court below erred in not dismissing the bill; 2d, in setting aside the award; 3d, in each decree rendered against the appellant; 4th, in overruling his several exceptions to the register's report.

R. H. & R. I. SMITH, and L. M. STONE, for appellant.— 1. "When a bill is filed for a general account, and the defendant sets up a stated account in bar, the plaintiff must amend his bill; because a stated account is, *prima facie*, a bar, till the particular errors in it are assigned. Upon the same ground, it has been held, that an award is a bar to a bill brought for any of the matters intended to be bound by it; and that if a bill is filed to set aside the award, as not being final, the specific objection to it must be stated upon the bill."—1 Daniell's Ch. Pl. & Pr. 371-2. See, also, *Caton v. Willis*, 5 Ired. Eq. 335; *Dawson v. Dawson*, 1 Atk. 1; Story's Eq. Pl. §§ 795, 798, 803; *Vandyke v. Brown*, 4 Halst. N. J. 657, 795; *Mebane v. Mebane*, 1 Ired. Eq. 403; *Badger v. Badger*, 2 Wallace, 87; *Routh v. Peach*, 2 Anst. 519; *Duckworth v. Duckworth*, 35 Ala. 70. This grows out of the undeniable doctrine, that awards, stated accounts, and releases, like judgments, may not be collaterally attacked, but can only be assailed directly by bill in the nature of a bill to impeach or open them; and such bills must specify the errors, mistakes, or frauds on which the attack is based. The bill, in this case, does not attack the award : it does not even notice the award, but ignores it altogether, and proceeds on the idea that there never was any submission or award.

2. But, even if the pleadings had been properly framed to attack the award, no sufficient reason is shown to impeach it. It is the duty of all courts to encourage arbitrations, and awards will not be disturbed, when valid on their face, except for fraud, partiality, or corruption on the part of the arbitrators.—Rev. Code, §§ 3148, 3160-61; *Tuskaloosa Bridge Co. v. Jemison*, 33 Ala. 476; 29 Ala. 325; 8 Ala. 548; 2 Stew. 130. Under a proper construction of the submission, it was not

necessary that the two arbitrators should select a third, unless they disagreed: the presence of a third man could not have changed the result. The parties themselves put this construction on the submission, and submitted their claims to the decision of the two arbitrators, whom they had themselves selected, without objection; and neither one of them can now be heard to say that the arbitrators had no authority to act.—*Diedrich v. Richey*, 2 Hill, 271; Caldwell on Arbitration, 103; 5 Mees. & W. 25; *Jesse v. Carter*, 28 Ala. 475; *Boston Water Power Co. v. Gray*, 6 Metcalf, 331; *Underhill v. Van Courtland*, 2 John. Ch. 339; 1 Atk. 63; 3 Atk. 494; 1 Vesey, 11; 4 Mod. 226; 4 Watts & Ser. 205; *Hawkins v. Colclough*, 1 Burr. 274; 2 Bay, 370; 1 Wash. 14-15; 8 Munf. 8; 7 Cranch, 171; 17 Louisiana, 471; *Davis v. Forshee*, 34 Ala. 107; Morse on Arbitration, 171; 3 Watts, 126; 25 N. H. 381; 10 Pick. 275; *Willingham v. Harrell*, 36 Ala. 583. Nor is the award open to the objection that it is wanting in certainty and definiteness. It merely states, as the result of the arbitrators' calculations and decisions, that a specified sum is due from one party to the other; and this is all that was necessary. They were not required to enter into details, and show how they disposed of each particular item submitted to them.—Morse on Arbitration, 408-10; *Tuskaloosa Bridge Co. v. Jemison*, 33 Ala. 476; *Davis v. Forshee*, 34 Ala. 107; 16 Vermont, 450. If the arbitrators went beyond the submission, and decided matters not embraced in it, as the chancellor supposed, there is nothing in the record to show it; and it is difficult to see how they could have done so, since they had no evidence before them, except the accounts and statements submitted by the parties themselves. Their award cannot be impeached by evidence which was not before them, unless it shows that they were guilty of fraud, corruption, or partiality. Arbitrators are not required to decide according to the strictness of the law, but may abate something in favor of natural equity. Acting in good faith, they may take into account equity and good conscience, and follow their own views of justice; and if the award itself does not show that, intending to follow the law, they missed it, it will not be set aside on account of a mistake of law.—2 Story's Equity, §§ 1453-4; *Knox v. Symond*, 1 Vesey, 369; *Boston P. W. Co. v. Gray*, 6 Metcalf, 131; *Fairchild v. Adams*, 11 Cush. 549; 2 Gallison, 61; 6 Pick. 148; 10 Pick. 348; *Ward v. American Bank*, 7 Metcalf, 486; 6 Humph. 171.

3. An amendment of the bill would be, substantially, a new case; and it ought not to be allowed, unless the court can clearly see that, under such new bill, the award ought to be

set aside. But, all the evidence adduced being insufficient to impeach the award, even if the bill had been properly framed in the first instance, or should be now amended, it ought to be finally dismissed by this court.

M. L. STANSEL, JOHN T. TERRY, and WATTS & WATTS, *contra.* 1. The submission required the selection of a third arbitrator, and an award rendered by two only is void.—Caldwell on Arbitration, 226; *McCrary v. Harrison,* 36 Ala. 577; *Short v. Pratt,* 6 Mass. 496; *Green v. Miller,* 6 John. 39; Watson on Awards, 73; *Patterson v. Leavitt,* 4 Conn. 50; 2 Greenl. Ev. § 74; Morse on Arbitration, 162, and authorities cited; 7 Wendell, 534. There was no waiver of this fatal defect, even if the presumption of a waiver could arise in such a case. The language and the conduct of the complainant, when the award was announced, as testified to by Taylor himself, show that he was not aware that the arbitrators were proceeding to make an award without calling in a third man; and he himself swears that he did not sign the submission, and never saw it until he then picked it up, and he cannot be held to have waived a compliance with its terms.

2. When an award is unconscionable, or grossly unjust, it will be set aside.—*Chambers v. Crook,* 42 Ala. 171; *Baird v. Crutchfield,* 6 Humph. 171; Caldwell on Arbitration, 170. The award in this case is shocking to the sense of justice; and the testimony of the arbitrators themselves shows that it was rendered without examining any witnesses, or hearing testimony; that they merely took the papers submitted by the parties, added up the result, and struck a balance; and this in a case involving partnership transactions, complicated accounts, claims and counter claims, and damages liquidated and unliquidated. Their finding could only have been based on the claim for damages, set up in the defendant's answer, which was outside of the submission, and outside of the partnership contract.—*Cutting v. Carter,* 29 Vermont, 72; 2 Story's Equity, § 1452 *c.*; Caldwell on Arbitration, 374, note 1; *Woodworth v. Van Buskirk,* 1 John. Ch. 432; *Emerson v. Udall,* 13 Vermont, 477; *Bean v. Farnam,* 6 Pick. 274.

3. The award is wanting in requisite certainty and finality. While deciding matters outside of the submission, it decides nothing as to the outstanding partnership debts, and nothing as to the large surplus of corn and cotton received by Brewer in excess of his share. These matters were clearly included in the submission, and the failure to decide them renders the award invalid.—*Rider v. Fisher,* 3 Bing. N. C. 874; Caldwell on Arbitration, 242; Adams' Equity, 191-2;

12 Wendell, 380 ; 11 Wheaton, 446 ; *Chace v. Westmore*, 13 East, 358.

4.  The character of the award, as developed by the testimony, is such as to warrant the inference of misconduct on the part of the arbitrators, which render the award void. *Van Cortlandt v. Underhill*, 17 John. 405 ; *Ives v. Metcalfe*, 1 Atk. 64 ; *Bumpass v. Webb*, 4 Porter, 65 ; *Butcher of Croyden's case*, 3 Eng. Ch. R. 76 ; 2 Vernon, 251 ; High on Injunctions, §§ 71, 162 ; Adams' Equity, 193 ; *Hartshorn v. Cottrell*, 1 Green's Ch. 297 ; 1 Sch. & Lef. 204 ; Morse on Arbitration, 535 ; 2 Story's Equity, §§ 1451–54.

BRICKELL, C. J.—The bill was filed by the appellee, for a settlement of the accounts of a partnership in planting, averred to have existed with the appellant in 1870, and to compel the appellant to account for property of the partnership, which, it is averred, he had converted to his own use. The answer denies the material allegations of the bill, and pleads, in bar of the relief sought, that the matters in controversy had been submitted to the arbitrament and award of Hugh G. Windham, and D. C. Taylor, who had rendered their award, ascertaining and declaring that the appellee was indebted to the appellant, on account of such matters, in the sum of twelve hundred and eighty-five 61-100 dollars. The final hearing was on the bill and answer, and proof addressed to the allegations of the bill, the matters of account, and to the fact of the submission and award. The chancellor declared that the award was not a bar, because it was uncertain ; because, in arriving at their conclusions, the arbitrators must have considered matters not submitted to them ; and lastly, because he regarded it as hard, unconscionable, and oppressive on the appellee. A decree was rendered, ordering an account in conformity to the prayer of the bill, and giving special instructions to the register, as to the mode of taking the account. A final decree was rendered, adjudging a large amount to be due the appellee from the appellant ; from which decree this appeal is taken, and numerous errors are assigned.

1. It is obvious that the question meeting us at the threshhold of our consideration of the case, is the fact of submission and award ; for, if that fact is proved affirmatively, in the present state of the pleadings, the award is a positive bar to the relief sought by the bill. Parties have an unqualified right to submit all controversies, involving pecuniary demands, or property, and rights of property, to the arbitrament of those in whom they confide, and whom they deem competent to determine them, rather than to enter on litiga-

tion, by pursuit of remedies in courts established by law. This mode of adjusting controversies, the statute declares, it is the duty of all courts to encourage ; and, in this respect, the statute is simply declaratory of the principles which courts of law and equity had observed for a long period prior to its enactment.—*Young v. Leaird*, 30 Ala. 371. The common law recognized the right; and, though statutes may prescribe the mode of submission, and the requisites of an award, they are not, unless so expressly declared, in abrogation of the common law.—*Byrd v. Odem*, 9 Ala. 755.

2–3. The object of the parties, in the submission of a controversy to arbitrament,is the ascertainment and determination of their respective rights, and the silencing of litigation; and this object would fail, if the award, when rendered, had not the finality and conclusiveness of a judgment or decree of a court of competent jurisdiction. Such is the effect and operation the law accords to it, when it is within the submission, and determines and disposes of the matters in dispute.—Morse on Arbitration, 487. As the claim or demand, which is the subject of suit, is merged in the judgment rendered, the claims or demands submitted to arbitration are merged in the award rendered ; and like a judgment or decree, the award may be pleaded in bar of any subsequent suit, founded on such claim or demand.—Morse on Arbitration, 490.

The submission before us is very general in its terms. There is no other description of the subject of submission,' on which the arbitrators must award, than *the matters in controversy*. To this general term the parties gave a definite application, when they appeared before the arbitrators, submitted their partnership transactions, and litigated their respective demands as partners. The subject-matter of submission was thereby rendered certain ; and to that the award must be referred.—*Price v. White*, 27 Mo. 275 ; *Woodward v. Atwater*, 3 Iowa, 61.

An award can not be assailed collaterally.—*Woodrow v. O'Conner*, 28 Vt. 776. When pleaded in bar to a bill in equity, seeking relief as to matters it embraces, if on its face it is valid, the force and effect of a judgment must be allowed to it. If the complainant assails its validity, for extinsic facts, the bill must be amended, and these facts must be stated specifically. The principle is the same, as when a release is pleaded ; or when, to a bill for general account, a stated, or a settled account is pleaded. Decrees must be founded on, and supported by pleading. Proof, without corresponding pleading, will no more authorize a decree, than pleading without corresponding proof.

*Caton v. Willis*, 5 Ired. Eq. 335 ; *McKinley v. Irvine*, 13 Ala.
593 ; *Paulling v. Lee*, 20 Ala. 753 ; *Crabb v. Thomas*, 25 Ala.
212.   A larger latitude, and less certainty of averment, may
have been indulged by a court of equity, than was originally
tolerated in courts of law.   But, as is said in *Duckworth v.
Duckworth*, 35 Ala. 70,  "It is a cardinal rule, founded in
good sense, that a bill must show the complainant's claim or
title to relief, with such accuracy and clearness, and with such
certainty, that the defendant may be distinctly informed of
the nature of the case which he is called on to meet : mat-
ters essential to the complainant's right to relief must appear,
not by inference, but by direct and unambiguous averment."
The award, if valid on its face, is *prima facie* a bar to this
suit, when connected with the evidence that the parties ap-
peared before the arbitrators, and submitted for their deter-
mination their partnership transactions, and their liability
to each other growing out of their relations as partners—the
matters which form the *gravamen* of the bill, and in respect
to which relief is sought.   Until the bar of the award is re-
moved, of these matters there can be no examination.   If the
bill assailed the award only, without allegation of the origi-
nal transactions, and the injury he had suffered from it, the
insufficiency of it would be admitted.   Claiming relief on the
original transaction only, without impeaching the award,
which forecloses all inquiry into them, it is equally in-
sufficient.   In either instance, but a part of the case is dis-
closed, and but a part of the facts on which the right of relief
depends are put in issue.   Hence, the general rule we have
stated, that an award can not be collaterally impeached by
evidence.   The grounds of objection to it must be stated
with precision.—*Willingham v. Harrell*, 36 Ala. 583 ; *Routh v.
Peach*, 2 Anst. 519 ; *Todd v. Barlow*, 2 Johns. Ch. 551 ; *Evert
v. Evert*, 5 Md. 353 ; 1 Dan. Ch. Pr. 371.

We concede the proposition, urged by the counsel for the
appellee, that the defendant, relying on an award as a bar,
must show its existence, and its *prima facie* validity ; and
when offered in evidence, objections addressed to the fact of
its existence, or to its invalidity, will be entertained.   But,
when its existence is shown, objections to its validity must
be supported by matter apparent on its face, and not by
matter extrinsic, which is not in issue.

4.   The only objection, addressed to the existence of the
award, is, that it is not shown the appellee entered into the
submission.   The answer could well be, that the fact is not
disputed, either by pleading or evidence.   But it clearly ap-
pears that he did enter into it.   True, the submission appears
to have been signed by H. Bain, in the joint names of H. &

[Brewer v. Bain.]

J. N. Bain.   The appellee recognized the signature, appeared before the arbitrators in person, and without objection entered into the arbitration.   If the signing was without previous authority, he thereby ratified it, and the ratification renders it obligatory.

5.   Another objection urged, which does not depend upon extrinsic facts, is that the submission required the arbitrators to select a third person, to act with them in the determination of the controversy, and that failing to make such selection, or, rather, the award not disclosing that such selection was made, and is the award of the arbitrators named and such third person, it is void.   This objection would be well taken, and would be fatal to the validity of the award, if it was not shown that the appellee consented to dispense with the selection of such person, and that the arbitrators named should proceed to hear and determine the matters submitted.   The matters in dispute were mere pecuniary demands, and claims to personal property, which may be created, extinguished, or released, without writing.   The original submission would have been valid, if merely verbal; and subsequent modifications of it by parol were operative. , *Valentine v. Valentine*, 2 Barb. Ch. 437.

6.   The remaining objection to the award is, that it is wanting in certainty, and does not finally determine the matters in controversy.   The want of certainty and finality is supposed to rest in the failure of the arbitrators to declare and decide how the outstanding debts of the partnership were to be paid, or what disposition was to be made of the excess of partnership property Brewer had received.   Certainty is essential to the validity of an award ; and if, when compared with the submission, the courts cannot ascertain what it decides, it is void.—*Reynolds v. Reynolds*, 15 Ala. 403.   Uncertainty, and the want of finality in an award, appear on its face, generally, when the submission, in terms, requires that the arbitrators shall decide several distinct matters, and as to one or more of these the award is silent, or states that no decision is made in reference to them ; or, when a submission is general in its terms, and the award recites in detail the matters which are decided, and it is apparent these are but a part of the matters submitted.   Under a general submission, like that in the present case, of all demands and controversies, or *of "the matters in controversy,"* arbitrators are not bound to enter into particulars, and express in their award each matter they have considered.   Their duty, it is said, is best discharged, by the simple announcement of the result of their investigation.—*Patton v. Baird*, 7 Ired. Eq. 260. Under such a submission as the present, an award of a cer-

(11)

tain sum of money, as due from the one party to the other, is taken as a full execution of the submission.—*Shirley v. Shattuck*, 4 Cush. 472; *Strong v. Strong*, 9 Cush. 560; *Karthaus v. Ferrer*, 1 Peters, 222. That result cannot be reached properly, unless all the claims and demands the parties may have against each other are considered.

Again, this objection involves extrinsic facts not put in issue. Neither by the submission, nor by the award, does it appear that there were outstanding debts against the partnership, or that Brewer had received of the partnership property more than Bain had received. These facts are disclosed only by the evidence. The award, on its face, is valid, and is a bar, not being impeached by appropriate allegations in the bill. No case could, more fully than this case, illustrate the importance and necessity of the rule which requires a plaintiff, impeaching an award, to state specifically the grounds of impeachment. The defendant had the right to be informed what were the objections relied on to defeat the award, and to reopen the controversy it was intended to close. Without informing him, the plaintiff introduces evidence of the partnership transactions, of debts created in the course of the partnership business, and of the shares of the partnership property each partner had received; and relies on the inferences which may be drawn from this evidence, and the results to which it leads, as indicating clearly that the arbitrators must have been guilty of partiality, or have fallen into gross error. But he neither avers nor proves that the arbitrators had before them the evidence now introduced. If he failed to introduce this evidence before the arbitrators, it was his own laches, and he forfeited all claim to rely on it subsequently, without excusing his neglect.—*Stiff v. Washington*, 5 Blackf. 473. If the award had been directly assailed, because the arbitrators, disregarding this evidence, had fallen into a gross error which vitiates it, the defendant would have been informed of the necessity of showing by proof that such evidence was not before them. The conjectures which have been indulged, as to what were the grounds on which the arbitrators proceeded, it may be, could have been dispelled; conjectures indulged, we may remark, in violation of the old and and established principle, that presumptions are made to support, not to defeat an award. We hold the award *prima facie* valid, and a bar to the case as it stands on the present pleadings.

The validity of the award, however, seems to have been a principal point of litigation in the court below; and it is certain the appellee has given all the evidence he can introduce, to avoid it. It would not be decisive of the litigation,

to reverse the decree, merely because of the insufficiency of the pleading. If, on appropriate pleading, the facts would not warrant setting the award aside, and entering into an account of the partnership transactions, it is better that we should pronounce the decree the chancellor ought to have rendered, and not by a remandment of the cause protract litigation.

7. The decree of the chancellor proceeds, mainly, on the ground that the award is unconscionable, and oppressive to the appellee. This may be good cause for setting aside an award; but it can be only when it clearly appears that the party complaining is free from fault or neglect; that having fairly and fully submitted the merits of his controversy, the arbitrators have wrought him injustice, either from partiality to his adversary, or from fraud and corruption; or that they have fallen into gross error, indicative of partiality, or of misconduct. It may be apparent that error has been committed—that the judgment of a court of competent jurisdiction would have been different, and that the losing party suffers injury. If the matter has been fairly tried by the arbitrators whom the parties have selected, it must be supposed that the possibility of falling into error was fully considered, and the risk of it consented to, when they were selected. The oppressiveness of the award is deduced from the fact, that the result reached by the arbitrators is so variant from that which is shown by the evidence to be the result on a fair and full statement of the partnership accounts. It cannot be said the arbitrators were guilty of error, or that partiality, or fraud, or corruption, can be imputed to them, however variant may be the award from this result, unless it had been shown they had such evidence before them. As well could the verdict of a jury be impeached, because of facts not in evidence, which would have compelled a different verdict. What evidence was before the arbitrators, is not shown, beyond their testimony, confirmatory of the recitals of the award, that the parties appeared, presented their accounts, and made their statements. No witnesses were examined, because none were offered, nor was it claimed by either party that any were desired. To impute to arbitrators gross error, nearly allied to, and indicative of corruption, because, in active litigation, by evidence not brought before them, it may be shown that the award they have rendered works a wrong to the losing party, would be sheer injustice. Indeed, who can say they have erred? Who can say the evidence they had did not justify their conclusions? A party entering into an arbitration must exercise the same diligence in presenting his

claims, or defense, that he is required to exercise in suits at law or in equity. Laches is as fatal to relief against an award, as it is to relief against a judgment. All the evidence found in this record could have been brought under the consideration of the arbitrators ; and if the appellee neglected its introduction, he must bear the consequences. Whatever of injustice it may disclose the award works, is not attributable to the arbitrators, nor to his adversary.—*Stiff v. Washington, supra.*

8. It is also urged by the chancellor, that the arbitrators must have taken into consideration the unfounded claim of the appellant, for waste to his plantation, committed or suffered by the appellee. If the claim was submitted to them— if it was a matter in controversy between the parties—its allowance, or disallowance, rested in their decision. It may be, if allowed to the appellant, an error of law was committed. But errors of law, committed by arbitrators, will not vitiate an award, unless it appears they intended to be governed by the law, and have mistaken well established principles applicable to the facts before them.—*Pierce v. Perkins,* 2 Dev. Eq. 250 ; *Johnson v. Noble,* 13 N. H. 286. While the error, which it is supposed the arbitrators committed in this respect, would not avoid the award, the supposition that it has been committed is mere speculation.

The uncertainty of the award, and its want of finality, when construed in the light of the evidence, were also supposed to be fatal to it. This objection we have considered. The existence of partnership debts, or, if any existed, the liability of Brewer for them, was one of the matters in controversy, embraced in the submission. It had been the subject of unpleasant disputation for several months before the submission, and before the termination of the partnership. It is not possible to avoid the conclusion, that they were considered by the arbitrators, and, so far as they are now shown, disallowed, or materially reduced. They were, doubtless, of the accounts the appellee submitted, and which he claimed should be allowed to him. This is also true of the claim that Brewer had received a larger share of the partnership corn and cotton than he was entitled to receive. These matters must have been considered, before the arbitrators could have reached the conclusion, that there was a debt due from the appellee to the appellant. Such debt could not exist, until there had been an examination of the partnership accounts, the liability of each partner was ascertained, and the claims against the partnership to which each was entitled, and then it was ascertained what was due from the one partner to the other. All this the award imports as

having been done, and it is a final, conclusive settlement of the partnership transactions of these parties, certain and definite in its terms.

Every consideration of policy, which attaches conclusiveness to judgments, applies with equal force to awards. It is as essential to the peace of society, and to the security of individuals, that, when free from fraud, corruption, or partiality—when fairly made, and when they are definite and certain in their results—that their conclusiveness and inviolability should be maintained, as that judgments should not be disturbed, or the litigation they involved be reopened. The award not being subject to any of the objections made to it, if these objections were well pleaded, it must prevail, as a bar to the suit.

The result is, the decree must be reversed, and a decree here rendered dismissing the bill, at the costs of the appellee.