WILLIAM H. HINES ET AL. V. JAMES T. DRIVER.

*Misrepresentations in Selling Partnership Interest.*—Where an action is brought for a misrepresentation, in the sale of a partnership interest, in which no question was made or suggested as to the general value of the business, but only as to the liabilities of the firm, and the solvency of debtors, it is no answer to say that the purchaser obtained in addition to the stock of goods and the claims something more in the shape of good will. The question simply is whether the purchaser got what he expressly bargained for.

Filed March 9, 1881.

Appeal from Hamilton.

Opinion of the court by Mr. Justice Elliott.

The appellant, William H. Hines, bought from the appellee one-third interest in a partnership business conducted under the name of Devinney, Elmore & Driver, and in payment executed three promissory notes, upon which the appellee, William Hines, became surety.

Recovery was had upon the last of the three notes, and this appeal brings before us the question whether any available errors were committed during the progress of the trial.

The defense of appellant was stated in an answer of three paragraphs; the first alleging that the appellee made a false and fraudulent representation as to the value of the stock of goods owned by the firm; 2d. As to the amount of notes and accounts due the firm; and 3d. As to the solvency of the debtors of said firm, and as to the amount of the liabilities of the firm. The second paragraph alleges a warranty covering the matters above mentioned, and the third is substantially the same as the second.

One of the causes assigned in the appellants' motion for a new trial is the ruling of the court permitting Elmore, Driver & Devinney, witnesses introduced by appellee, to testify as to the value of the good-will of the firm business of the house of Devinney, Elmore & Driver. There was no issue upon the value

of the good-will, nor was there any evidence upon that subject adduced by the appellants. The testimony offered by the appellants was directed entirely to the representations charged by the answer to have been fraudulently made, and no question was made or suggested as to the general value of the business. The appellants were entitled to receive from the appellee what they had purchased, and were also entitled to insist that the condition of partnership affairs, as to the liabilities of the firm, and the solvency of its debtors, was substantially as represented, and it was no answer to prove that they got in addition to the stock of goods and claims something more in the shape of good-will. The question was not what was the value of that which the appellee got, but did they get that for which they contracted? Proving that the appellants got the good-will of the business, and that it was of value, did not tend to disprove the existence of the facts relied upon as a defense to the action. The appellee argues: "That for the purpose of corroborating the *bona fides* of the transaction we should be allowed to show anything that would tend to increase the value of the consideration of the note in suit, the same as the appellant would be allowed to show anything to diminish it." This argument is fallacious. The assumption that the appellants might have shown anything tending to diminish the value of the consideration is far from correct, for the appellant would not have had any right under the issues to have given a syllable of testimony as to the value of the good-will. The appellants were entitled to the benefit of their bargain, and if the appellee voluntarily included in the sale good will of value, he cannot excuse the making of fraudulent representations as to other matters by evidence of the value of that good-will. It is true that good-will is property, and that it may have an appreciable value, but it does not follow from this that one who has induced another to enter into a contract upon the faith of representations as to the value of goods, as to the solvency of debtors, and the amount of liabilities, may, when called to account for these representations, excuse himself upon the ground that some part of the property embraced in the sale was of much greater value than that at which the parties estimated it. The trial court erred in allowing this evidence.

The court, upon appellee's motion, gave, among others, the following instruction:

"4th. If you believe from the evidence that the contract between the plaintiff and William Hines, jr., was reduced to writing, then you will look to the contents of the writing alone for the terms and conditions of the contract, and will entirely disregard any parol statements that may have been proved different from the contents of the written contract."

This instruction was erroneous. The clause directing the jury to entirely disregard any parol statements different from the provisions of the contract, was, under the issues and the evidence in this case, entirely too broad. The jury must have understood from this instruction that they were to give weight only to such parol evidence as corresponded with the terms of the written contract, and this, in cases where fraud is the issue, is plainly not the law. It is an elementary doctrine, everywhere recognized by common law courts, as well as by courts of equity, that evidence tending to show fraud is admissible in cases where fraud is the issue, although it may add to or contradict the terms of the written contract. Wharton Ev., § 931; 1 Green. Ev., § 284; 1 Story Equity Jur., § 200; Chitty Cont., 119; *Gatling* v. *Newell*, 9 Ind., 272.

In the first instruction given by the court the jury were told that if the contract between the parties was reduced to writing, then the law presumes that the writing contained the whole contract, and you will disregard any evidence tending to prove that there was a parol contemporaneous contract; and taking this instruction in consideration with the fourth it is very evident that the case was put to the jury upon an erroneous theory.

The first instruction asserted an abstract proposition of law correct enough in the proper case, and not, considered apart from the fourth, erroneous in the present; but when taken in conjunction with the latter, as must have been done by the jury, a wrong rule was declared, and the minds of the jurors guided to an erroneous conclusion. The effect of the instructions was to shut out all parol evidence, and in such a case as that under con-

sideration, a rule more flatly and directly opposed to the correct one could not well be imagined.

The counsel for the appellee in defense of the fourth instruction say: "Under the issues made by the second paragraph of the answer, which was a breach of warranty, the instruction was proper. It was eminently proper to tell the jury if there was no warranty expressed in the written contract the defendants could not prove a parol warranty."

Unfortunately for the appellee's argument the court did not say a word about a warranty, but by its instructions excluded from the consideration of the jury all parol evidence. The jury were not told that parol evidence should be excluded from their consideration upon any one branch of the case, but they were told that "any parol statements" different from the provisions of the contract "must be entirely disregarded."

Other questions are discussed, but as there must be another trial we think it unnecessary to consider them. We cannot, however, refrain from adding that the instructions, taken as a whole, are confused and incomplete, and greatly need remodeling. We cannot say that these defects are here available as errors, because appellants did not ask fuller and more complete instructions upon the material points, and no exceptions were so reserved as to bring the question properly before us.

The judgment is reversed at the costs of the appellee; and the cause remanded, with instructions to sustain appellants' motion for a new trial.