# Payne *v.* Crawford.

### Statutory Action in Nature of Ejectment.

1.   *Attorneys signature to amendment of complaint* —An amended com-
plaint is not demurrable because the amending clause to be substi-
tuted for a clause in the original complaint was not signed by counsel,
when the amendment being effected, the complaint as amended would
present his signature.

2.   *Practice in making amendment by clause.*—In making amendments
to complaints by substitution of clauses it would be the better practice
to re-write the count and cause it to show at a glance how it would
read when amended.

3.   *Validity of arbitration and award made pursuant to church regula-
tions.*—An arbitration and award are none the less binding because
made pursuant to the regulations of a church to which the parties be-
long.

4.   *Not necessary to swear arbitrators in a common law submission un-
less demanded by parties.*—In a common-law submission to arbitration,
the arbitrators need not be sworn unless the parties demand it, and
it will be presumed to have been dispensed with if not required in
the submission.

5.   *Sufficiency of submission and award* —An agreement by the par-
ties "to submit the matters in dispute between them in reference to
the boundary line between them," and an award defining the bound-
ary line, and determining the rights of the parties thereunder is
sufficient.

6.   *Failure to comply with verbal condition, not in written submission,
will not avoid award.*—An award of arbitration cannot be avoided by
failure of arbitrators to comply with verbal conditions, not in the
written submission.

7.   *Waiver of such conditions.*—Compliance with such conditions was
Vol. 97.

[Payne v. Crawford.]

waived by allowing the trial of an action of ejectment—in which the arbit·ation was pleaded as a defense, to proceed without making the same known.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. J. M. CARMICHAEL.

This was a statutory action of ejectment by L. W. Payne against Mary A. Crawford. ·There was judgment for plaintiff, and defendant appeals.

At the request of the plaintiff the following written charges were given to the jury: (1.) "We ask the court to charge the jury that the fact that the submission for arbitration was in writing is no evidence that the arbitration was not a church arbitration." (2.) "If the jury find that this arbitration was a church arbitration, then the jury must not consider it at all." (3.) "If the jury find from the evidence that Mrs. Crawford was in possession of the disputed land, claiming to own it up to the line claimed, before Payne took possession of it, and that she held possession up to the time that Mr. Payne took possession, then she is entitled to recover, whether her paper title covered it or not." The defendant duly excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give the two charges requested by him, which were as follows: (1.) "An arbitration may be both a church arbitration and a common-law arbitration." (2.) "If the parties went into an arbitration as citizens as well as church members, intending to settle their differences outside of as well as in the church, they could bind themselves thereby as well as if the church had had nothing to do with it."

The assignments of error embrace all the rulings of the court adverse to the defendant, ·on the pleadings and evidence, charges given, and the refusal of charges asked.

GEORGE P. HARRISON, for appellant, cited Stephens on Pleading, page 29 ; Code of Alabama, form 29, 4th Rule of Practice, Code, p. 799 ; 1 Am. & En. Ency. of Law, §§ 711, 698 and 713 ; *Burrus v. Meadors*, 90 Ala. 140; Tyler on Ejectment, 206 ; Code of Alabama, § 2837; *Mudge v. Treat*, 57 Ala. 1; *Irion et als v. Lewis*, 56 Ala. 190 ; *Hazard, Admr. v. Perdue*, 3 Port. 43 ; 3 Brickell's Dig. 109, § 33 ; *Moody v. Keener*, 7 Port. 218 ; 12 Am. & En. Ency. of Law, 375 and note 4; *Doe ex dem v. Clayton et al.*, 73 Ala. 359 ; 3 Brick. Digest, p. 436, §§ 436-7 ; *Governor v. Campbell*, 17 Ala. 566 ; *McGee v. Billingsly*, 3 Ala. 679 ; *Pool v. Devers*, 30 Ala. 672.

J. M. CHILTON, *contra*, cited *Russell v. Erwin's Admr.* 38 Ala. 44 ; Code, §§ 2691, 2833 ; *Jenkins v. Noel*, 3 Stew. 60 ;

[Payne v. Crawford.]

*Rayburn v. Elrod et al.*, 43 Ala. 700 ; *Sims & Howell v. Tomp-kins and wife*, 30 Ala. 158 ; *Heifner v. Porter & Simmons*, 12 Ala. 470 ; Code, § 3228 ; 18 Mo. 255 ; 36 Am. Dec. 718 ; 2 Cox, 369 ; 8 S. & M. 298 ; 20 Barb. 418 ; Lawson's Rights & Rem., Vol. 6, § 3312, Note 12 ; 1 Brickell's Dig. §§ 119, 120, 122, 124, 125, 130, 131, 132, 133, 134 ; *Langford v. Green*, 62 Ala. 314 and cases there cited ; *Wollf v. Shelton*, 51 Ala. 425 ; Morse on Arbitration, p. 229 ; 3 Brickell's Dig., p. 705, § 70 ; Code, § 2690 ; *Med. & Surg. Society v. Weatherly*, 74 Ala. 248, and cases there cited ; Lawson's Rights & Rem., Vol. 2, § 120 ; *Carlisle v. Kinnebrew*, 89 Ala. 329 ; 3 Brickell's Digest, p 325, § 47 ; *Grace v. McKissack*, 49 Ala. 163.

STONE, C. J.—There was a demurrer to the complaint as second amended, because the amendment was not signed by counsel. That amendment consisted simply in a change of the description of one of the pieces of land sued for. The amending clause was intended to be substituted for another, and thereby displace and eliminate the original clause. Carried into effect, the complaint, as amended, would present the signature of counsel, and would be complete. In amendments, such as here made, it would be better to re-write the count, and cause it to show at a glance how it would read when amended. This would avert confusion and misunderstanding. Our constitutional rule in regard to amending statutes furnishes a safe and simple guide to be followed in such cases. We do not think, however, that a failure to do so, in a case like the present, is a ground for demurrer.

This is a statutory real action, brought by Mary A. Craw-ford against L. W. Payne, for the recovery of a strip of land lying between their several possessions. Their lands were and are co-terminous, and their contention raised the issue whether the strip belonged to the one or the other. The *situs* of the dividing line was the only subject of litigation, so far as this particular tract was concerned, for neither con-tended that their asserted titles overlapped each other. Neither asserted claim, save as they severally contended a proper survey and measurement would show the rightful-ness of their several claims, One defense, pleaded and re-lied on by defendant Payne, was that before the action was brought, they had, by written agreement, submitted the matter of the disputed boundary to arbitration, one named by each with the authority to them to name a third ; that the two selected arbitrators had agreed on and chosen an umpire ; that the arbitrators had acted, having the parties

and their witnesses before them, and that they had made a written award, finding that the disputed strip of land was the property of Payne, the defendant. Copies of the agreement of submission and of the award are set forth in the statement of facts. Very many objections were raised to the sufficiency, alike of the submission and of the award. Some of these we will proceed to notice. We will premise, however, that this was not a statutory submission.—Code of 1886, § 3221, *et seq*. The questions presented must be determined according to the rules of the common-law.—*Brewer v. Bain*, 60 Ala. 153.

It is objected to the sufficiency and binding effect of the submission and award, that the subject of the contention is not described in such manner as to show what was intended to be submitted, and what was decided. The language they employ was, "We hereby agree and bind ourselves to submit the matter in dispute between us in reference to the boundary line between our lands ' to arbitration." The agreement then continued: "We furthermore agree and bind ourselves to abide by the decision of said arbitrators." This was signed by both parties.

The award is very specific, and described the proper dividing line between them in language that would be sufficient in a deed of conveyance. They give to Payne the land lying south of a dividing line, "beginning at a pine stob about sixty or seventy feet south of the mouth of the lane from Auburn to the colored grave-yard, and running six degrees north of east to a sweet-gum tree at the north-east corner of said Payne's woodland, thence south along the wire fence of said Payne's woodland, the eastern boundary of said Payne's to the Henry Sill's place."

The law favors and encourages the settlement of dispute by arbitration, and neither exacts nor expects technical precision either in the submission or the award. It is enough if certainty to a common intent be observed. We think the descriptions in this case are sufficient to show what was intended, and, with reasonable care and skill, to prevent mistakes. See the many authorities collected in 1 Am. & Eng. Encyc. of Law, 656, and note 1 ; 699, and note 2.

It is objected in the second place, that the arbitrators were not sworn. That is not indispensable in a common-law arbitration ; and if not required by the submission, or demanded by the parties, it will be presumed it was dispensed with.—1 Amer. & Eng. Encyc. of Law 674, and notes.

It was attempted to be shown in avoidance of the award, that plaintiff, Crawford, verbally required that the line

[Payne v. Crawford.]

should be surveyed as a condition of her agreement to be bound by the action of the arbitrators. What did actually take place was a demand to that effect made known to her pastor, but neither embodied in the written submission, nor shown to have been communicated to the arbitrators. When the controversy came up for consideration and decision, it is not shown that she claimed this step should be taken. We think there are two complete answers to this contention : *First*, it was an attempt to vary and add to the terms of the submission, by proof of an oral, qualifying stipulation not embraced in the writing ; and *second*, by allowing the trial to proceed without making known the condition on which her consent to arbitrate had been obtained, she must be held to have waived a compliance with it.

It is further objected, that the arbitration in this case was had in obedience to a mere church regulation, and that it is not binding or conclusive upon the parties as to the title to the property in dispute. The precise form in which this question is presented is as follows : " Plaintiff and defendant were members of the same church—the Methodist Episcopal Church, South. By the discipline and regulations of that church, it is made the duty of the pastor having charge of the church, whenever any dispute arises between two or more members concerning the payment of debts or otherwise, which can not be settled by the parties concerned, to recommend to the contending parties a reference, consisting of one arbiter chosen by the plaintiff, another chosen by the defendant—which two arbiters so chosen shall nominate a third. If any member of the church shall refuse, in cases of debt or other disputes, to refer the matter to arbitration, or shall enter into a law-suit with another member before these measure are taken, he shall be expelled, unless the case be of such a nature as to require and justify a process at law."

. The award of the arbitrators was rendered in writing, signed by each of them, and sufficiently specifies the dividing or boundary-line between the two litigants. It states that, "after examining numerous and reputable witnesses, and re-tracing the east and west line between the said Crawford and Payne, they proceeded to describe and declare what they ascertained was the true dividing line.

Is there any thing in the objection that this arbitration was had under a church regulation, if it is sufficient in other respects? What is the *rationale* of such regulation? Manifestly, the cultivation and preservation of harmony and brotherly love between the members caused its adoption.

[Payne v. Crawford.]

The observance of it by the members cannot be enforced, either by the church or by the courts of the country. The only penalty for its non-observance is a church trial and its consequences; and the infliction of that penalty rests exclusively with the church. Compliance with it is a matter of pure volition, which law neither enforces nor restrains. What are the purposes and policy of arbitration? All will agree that speedy and inexpensive adjustment of disputes concerning property-rights, without the exasperating tendencies of a suit in court, is its high commendation. Is it entitled to that commendation, if it accomplishes nothing? Why arbitration, if no right is settled by it? Why should the church require arbitration, if the rights in dispute remain in the same unsettled condition they were in before it was entered upon? Is it a mere empty form? We hold that an arbitration held, and awarded rendered pursuant to church regulation, is equally binding—(no more and no less) —as if held without reference to such regulation. If valid and binding without the regulation, it is equally valid and binding, notwithstanding the rules of the church brought it about. To hold otherwise would be to convict the church of establishing a rule that can lead to no practical result. The award rendered in this case, if otherwise valid, would be an estoppel upon plaintiff's right to maintain this action. *Cox v. Jagger*, 2 Cow. 438; s. c. 14 Amer. Dec., 522; *French v. New*, 20 Barb. 481.

The parties litigant, however, did not permit this case to remain as the award had left it. They entered into a subsequent, written agreement, by which they again agreed to submit the matter in dispute to other and different arbitrators. True, those arbitrators never acted; but that is not the test. By the agreement, they set the former award aside, and bound themselves to be governed by one to be subsequently made. Like the grant of a new trial at law, it did away with the former finding, and left the issue still open.—*Burnside v. Potts*, 23 Ill., 411.

Many replications were filed to defendant's pleas, and there were many rulings upon them. What we have said above renders it unnecessary that we should consider these rulings. They cannot, it would seem, be material on another trial.

Some testimony was put in by plaintiff, against defendant's objection, which was illegal. The deed, of date April 8th, 1879, from Crawford and wife to McDowell, trustee, is of this class. That deed could not be evidence against Payne of ownership of the land conveyed. The plaintiff, while on

39-97

the stand as a witness for herself, was asked the question, "How much of her land defendant had inclosed according to her best impression?" This question was objected to by defendant, but it was permitted to be answered and defendant excepted.

The question and answer appear in the bill of exceptions, without any precedent or attendant facts in explanation of them, and we are somewhat at a loss in determining their legality. If there had been testimony previously introduced tending to show where the true dividing line ran, and further tending to show that Payne's inclosure extended over that line, then the inquiry had no other aim than to obtain Mrs. Crawford's judgment as to the quantity of her land Payne had inclosed, taking the testimony previously given as a guide in determining where the true line ran. This would be nothing more than asking her judgment or opinion as to the quantity of a given lot of ground, and was free from objection. If, however, the question and answer were a mere naked proposition, having no light shed upon them by other testimony tending to fix the proper dividing line, and defining the location of Payne's fence, then the question and answer were both improper. In other words, witnesses may give their opinion as to quantity of a lot of ground, when it is so described as to be brought within their comprehension. The answer in such case is simply as to quantity and not as to the right or title. The abstract inquiry, as made without other predicates express or implied, cannot be the subject of an evidential opinion. It would be to substitute the opinion of a witness for that which should enter into the deliberations of the jury, in the formation of their verdict.

The first and second charges given at the instance of plaintiff, and excepted to, have been sufficiently noticed above. It is not perceived how they can arise on another trial.

Taking the recitals in the bill of exceptions for our guide, it is not shown that plaintiff had been in the prior, actual possession of the land. Cutting the two trees under the circumstances shown, attended with the declaration imputed to Mr. Crawford, if he made it, would not amount to actual, independent possession. There is no proof of actual prior possession in Mrs. Crawford shown in the bill of exceptions, so as to call for, or justify the third charge asked by plaintiff. We make this statement, because we find it exceedingly difficult to determine precisely what was done, or the order in which it was done. It is to be hoped that on a second trial the facts will be more clearly developed,

[Neal, Morse & Co. v. Boggan.]

The circumstances attending the receipt of the verdict and its correction were irregular.

Reversed and remanded.