JONES, Justice
(concurring in the result).
I concur in the result of the opinion of the Court to reverse the judgment and remand the cause for trial. But I would hold that the order on remand should be much more restrictive than that contended for by the Appellant.
Neither of the respective “all or nothing” positions of the parties, in my opinion, is correct. Midsouth urges upon the Court the argument that “final approval [of the work] by the independent engineer in accordance with the [contract] provisions” means the independent engineer was not vested with the authority to determine *246 whether the completion of the work was “in accordance with the [contract] provisions.” Rather, says Midsouth, this language of the contract imposed a condition upon the independent engineer’s “final approval,” the performance of which is now subject to litigation.
Hughes counters this argument by contending that the very function of the independent engineer was to oversee Hughes’s performance of the contract. Thus, says Hughes, the phrase “in accordance with the [contract] provisions” set the standard by which the independent engineer was to measure Hughes’s performance, and was not intended as a condition imposed upon the independent engineer’s performance. Accordingly, says Hughes, when the independent engineer rendered his final written approval of the work, and Hughes tendered $1,000 to Midsouth “in order to completely perform and comply with the terms of the written contract,” Midsouth was bound to accept both the report and the tendered consideration, thus discharging Hughes from all obligations under the settlement agreement.
I find no ambiguity in the contract. I agree, at least in part, with Hughes’s interpretation to the effect that these parties intended to settle their dispute relative to the initial oral agreement by entering into the subsequent written contract, which, by its terms, imposed upon Hughes additional work to be performed according to its specified conditions. Furthermore, the parties mutually agreed upon an independent engineer, whose express function was to oversee Hughes’s performance in accordance therewith. By appointing the independent engineer, the parties agreed in advance that his approval of Hughes’s performance of the contract would be substituted for their own, thus avoiding a continuation of the original dispute.
To argue, as Midsouth does, that the duty and authority of the engineer is to be measured by the terms of the agreement (in the sense of the specifics of the work to be performed by Hughes) is to vitiate the express function of the third-party arbiter. Unless the agreed upon and appointed engineer has the authority to exercise his independent judgment as to Hughes’s performance of the terms and conditions of the contract, the contract stands as though it contained no provision for a third-party expert to oversee and certify the complete and faithful performance thereunder.
It has long been the policy of the law not only to authorize, but to encourage, parties to submit controversies involving property to arbitration by those whom they deem competent to arbitrate the same, rather than to litigate the matter. Brewer v. Bain, 60 Ala. 153, 158 (1877). The parties’ objective in submitting to arbitration — the ascertainment of their respective rights and avoidance of litigation — would be frustrated indeed, if the award, when rendered, lacked finality, or if the law subjected the process to technical precision either in the submission or in the award. Payne v. Crawford, 97 Ala. 604, 607, 11 So. 725, 726 (1892).
At this juncture, a restatement of the precise issue presented may be helpful. Counsel for Appellee, in brief, narrows the issue thusly:
“Midsouth’s counterclaim on each cause of action alleged therein arises from the initial dispute which the parties agreed to submit to arbitration. A valid award, i.e., the reports of the independent engineer, was made pursuant to this agreement. Therefore, the award acts as a bar to the counterclaim asserted by Midsouth, which counterclaim is based entirely on the original dispute.”
Does this mean, then, under all circumstances, and without any exception, the parties were bound to accept the “award” — i.e., the written approval submitted by the engineer — as a conclusive settlement of the matter? The answer to this question is found in Glens Falls Insurance Company of New York v. Garner, 229 Ala. 39, 155 So. 533 (1934):
“It may be stated broadly that, when parties submit their matters in controversy to arbitration, and an award is made pursuant to the agreement of submission, *247 such award is final, unless the arbitrators are guilty of fraud, partiality, or corruption in making it. It partakes of the nature of a judgment or decree of a competent court, and may be pleaded in bar of a subsequent suit founded on the same claim or demand.” 229 Ala. at 41,155 So. 533.
It is apparent from the quoted language of Glens Falls that the finality of an arbitration award may be attacked upon two general grounds: 1) That the award is not within the scope, or is violative of the-agreement, of submission; and 2) that the arbitrator is guilty of fraud, partiality, or corruption in making it. At the very least, Midsouth seeks to impugn the validity of the award by averments of fact going both to the award’s substantial noncompliance with the terms of submission and to acts of noncompliance on behalf of the engineer which conceivably could amount to fraud, partiality, or corruption in making the award.
While I agree that the trial court erred in granting Hughes’s motion to dismiss Mid-south’s counterclaim, I would hold that Mid-south is not entitled to turn the clock back and litigate the original dispute. Rather, I would limit Midsouth’s right to prosecute its counterclaim to the two-pronged attack on the arbitration award set out in Glens Falls as discussed above.
MADDOX, J., concurs.